POTOMAC ELECTRIC POWER COMPANY, a District of Columbia and a Virginia Corporation, Plaintiff,

v.

Douglas B. FUGATE, State Highway Commissioner of Virginia, Defendant.

WASHINGTON GAS LIGHT COMPANY, a Virginia Corporation, Plaintiff,

v.

Douglas B. FUGATE, State Highway Commissioner of Virginia, Defendant.

Civ. A. Nos. 4996, 4997.

United States District Court
E. D. Virginia,
Richmond Division.

Oct. 16, 1967.

Armistead L. Boothe and John S. Stump, Alexandria, Va. (Boothe, Dudley, Koontz, Blankingship & Stump, Alexandria, Va., and Mays, Valentine, Davenport & Moore, Richmond, Va., on brief), for plaintiffs.

Paul D. Stotts, Asst. Atty. Gen. of Virginia (Robert Y. Button, Atty. Gen. of Virginia, and Kelly E. Miller, Asst. Atty. Gen., on brief), for defendant.

Before BRYAN and BUTZNER, Circuit Judges, and LEWIS, District Judge.

BUTZNER, Circuit Judge.

The plaintiffs are public service corporations operating in Northern Virginia. The defendant, Highway Commissioner of Virginia, has instructed the plaintiffs to relocate at their expense certain utility lines to permit the construction of interstate highways in Arlington County, Virginia. The plaintiffs seek declaratory and injunctive relief that will require the state to pay with federal aid the non-betterment costs of relocation.

The plaintiffs' lines in Arlington County have been installed under numerous permits, contracts and agreements, which, for the purposes of this opinion, may be classified roughly into three groups: First are irrevocable permits or easements obtained from private property owners. There is no dispute about these. The state recognizes its obligation to pay non-betterment relocation costs. The second group consists of permits obtained from the state in which the utilities agreed to relocate without cost to the state. There is no dispute about these. The utilities recognize their obligation to pay the cost of relocation. The third group includes a broad general class of permits or grants whose terms vary greatly. Some allow the plaintiffs to use public streets and places, but contain no express provisions for the cost of relocation. Others were granted by public service corporations. Generally these contained relocation clauses or provisions allowing the grantor to terminate the easements upon short notice. The plaintiffs also obtained from governmental bodies other than the state permits which contained relocation clauses requiring the plaintiffs to move their lines at their own expense. With reference to all of these permits the state takes the position that it is not required to pay relocation costs.

Title 23, United States Code, § 123, sanctions the use of federal funds to reimburse the state for the cost of relocating utility facilities caused by construction of the interstate system of highways. Further, the statute provides in part:

"Federal funds shall not be used to reimburse the State under this section when the payment to the utility violates the law of the State or violates a legal contract between the utility and the State."

In 1958 Virginia enacted comprehensive legislation to permit the state to participate in the interstate highway system. Included in the Act is § 33-36.9, Code of Virginia (1966 Supp.) authorizing payment for utility relocation required by interstate highway construction in cities and towns. In 1964 § 33-36.10, Code of Virginia (1966 Supp.) was added, which provided for reimbursement to publicly owned utilities whose facilities on existing county

streets or highways must be relocated for interstate projects.

The defendant contends that these statutes define the limits of his authority to pay relocation costs, and consequently he is prohibited from paying the plaintiffs. The plaintiffs urge that the statutes are simply declaratory of some, but not all, utilities that must be paid, and that they should be reimbursed under the general provisions of the Act authorizing Virginia to participate in the interstate highway program and the federal statute authorizing payment for relocation.

Three general questions of state law are presented:

First, Virginia's common law and statutory and constitutional provisions pertaining to the reimbursement for relocation of utility lines that must be removed from public ways to permit construction of the interstate system in the counties of the state. Second, the nature or character, under Virginia law, of the utility's easement over public ways. Third, the differences between counties (particularly urban counties) and cities and towns upon which the distinctions found in §§ 33–36.9 and 33–36.10 are based. The parties recognize that these differences are not merely physical. The chief differences are found in pertinent Virginia Acts and charters.

None of these questions has been definitively answered by the state courts. This is recognized by the plaintiffs who ask us to interpret their contracts and to construe Virginia law as authorizing relocation at the expense of the state. Only if we reach a conclusion that state law is adverse do the plaintiffs urge that we hold §§ 33–36.9 and 33–36.10, Code of Virginia (1966 Supp.), unconstitutional on the ground that they wrongfully discriminate against private utilities operating in the counties of the state.

Additionally, the plaintiffs urge that if state law forbids payment for relocation of their lines their property is taken without just compensation as required by § 58 of the Constitution of Virginia and they are denied due process of law as guaranteed by the 14th Amendment to the United States Constitution.

We believe this court should abstain from adjudication while the parties afford the Virginia courts an opportunity to construe the state law applicable to this action. We think that this is particularly true when the plaintiffs urge as their primary basis of relief favorable interpretation of state law by this court; only if the state law is found to be unfavorable to the plaintiffs do they charge that the state laws are unconstitutional.

We anticipate that abstention will cause no undue hardship through delay. We expect the parties will move with diligence to the crux of the controversy without procedural delay. No highway construction is being postponed. The parties have stipulated that the plaintiffs will relocate their facilities and keep a record of the cost. The defendant, as well as the plaintiffs, throughout these proceedings has shown a commendable desire to proceed promptly and obtain a decision of the controversy.

Abstention is required by City of Meridian v. Southern Bell T. & T. Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959). There the telephone company sought a declaratory judgment that a Mississippi statute imposing a charge for use of public streets did not apply to it, and if it did apply, it violated the federal and state constitutions. The district court declared the statute in conflict with both constitutions. The circuit court affirmed. The Supreme Court vacated the judgment and remanded the case to the district court with directions, at 358 U.S. 640, at 79 S.Ct. 456:

> " * * * to hold the cause while the parties repair to a state tribunal for an authoritative declaration of applicable state law."

The Supreme Court added:

> "Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals

preliminary to a federal court's consideration of the underlying federal constitutional questions. * * * That is especially desirable where the questions of state law are enmeshed with federal questions. * * * Here, the state law problems are delicate ones, the resolution of which is not without substantial difficulty—certainly for a federal court. * * * In such a case, when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily. * * * "

This court will retain jurisdiction while the plaintiffs apply to the state courts for a declaration of state law. In this litigation we expect both parties will inform the state courts of their positions on the federal claims so that the state law may be construed in light of these claims. England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).