### Staunton

## CHARLES SEGALOFF, ET AL. v. CITY OF NEWPORT NEWS.

September 6, 1968.

Record No. 6732.

Present, All the Justices.

Herbert V. Kelly (Jones, Blechman, Woltz & Kelly, on brief), for appellants.

Robert V. Beale, Assistant City Attorney; J. Warren Stevens (Harry L. Nachman, City Attorney, on brief), for appellee.

HARRISON, J., delivered the opinion of the court.

An appeal was granted Charles Segaloff and two associates from an order of the trial court directing that they alter or remove a structure, which had been constructed on their lot at 10858 Warwick Boulevard in the City of Newport News, so that no portion of the structure is within 30 feet of any point at which the property line of the lot adjoins the street line of Warwick Boulevard. This case

requires an interpretation of ordinances regulating zoning and the erection of signs in that city.

On August 1, 1963, Charles Segaloff, Walter S. Segaloff and Lawrence A. Rabinowitz, hereinafter referred to as Segaloff, submitted to the City of Newport News, hereinafter referred to as City, plans for the construction of a commercial store building on the north side of Warwick Boulevard, along with their application for a building permit. This application covered "foundation only as per plans". A second application for a building permit, received by the City on August 21, 1963, was for "building dept. store as per plans", and the general contractor for Segaloff certified that " . . . the construction will conform to the regulations in the building code, the zoning ordinances, other city ordinances, or private building restrictions, if any, which may be imposed on the property by deed".

A building permit was issued by the City for the construction of the store (La Vogue), and it has been erected on the north side of, and about 110 feet from, Warwick Boulevard. It is designed with a 7 1/2-foot overhang along all sides. Underneath the overhang is a passageway, or private sidewalk, for customers to use in entering and leaving the store.

Shown on the plans filed with Segaloff's application for a building permit is also a 16 by 75-foot structure designated thereon as a "canopy". It has been constructed and stands between Warwick Boulevard and the La Vogue Store. Its southern end is 12 to 15 feet from the north edge of Warwick Boulevard. The northern end of the canopy is 20 feet from a side of the La Vogue Store.

The canopy is designed so that cars can park on either side, and their occupants, as well as other customers from the sidewalk along Warwick Boulevard, can use the walkway under the canopy in going to and from the La Vogue Store. This walkway does not lead directly to any entrance of the store. It leads to the side of the store building. Customers are afforded protection from the weather for the length and width of the passageway under the canopy. They then have to traverse an open space of 20 feet, and go up three steps to reach the protected walkway under the overhang of the La Vogue building. From this point, opposite the north end of the canopy, it is 25 feet to the entrance or doors of the store.

During the course of the construction of the store and canopy, and on or about October 22, 1963, the City Director of Building Inspection visited the premises and noted the canopy for the first time,

although it was shown on the plans. He observed that it was located within 30 feet of Warwick Boulevard in violation of the 30-foot setback requirement as specified in a city zoning ordinance.

Various discussions were had by City officials with Segaloff concerning the alleged violation, and the possibility of alternate courses of action were explored. Segaloff filed an application with the Board of Zoning Appeals for a variance from the City's zoning ordinance, which application, after a hearing, was denied. Segaloff was notified on December 17, 1963 by the City Zoning Inspector that the structure would have to be corrected to comply with the zoning ordinance. Thereafter the City filed a bill of complaint, seeking injunctive relief for the removal of the canopy. From a decree which ordered that portion of the structure located within 30 feet of the street line to be removed, we granted Segaloff an appeal.

We comment first on the contention in the Segaloff brief that the City is estopped from withdrawing the building permit issued to them and from complaining as to the canopy.

It is well-established that a municipality, under valid zoning ordinances, may require that permits be obtained from designated public officials as a prerequisite to the erection of buildings or similar structures. 101 C. J. S., Zoning, § 219, p. 978. When a municipality grants such a permit, it is acting in its governmental, not proprietary, capacity and is not estopped as the result of its acts or those of its agents or employees. *Helms* v. *City of Charlotte*, 255 N. C. 647, 122 S. E. 2d 817 (1961); 101 C. J. S., Zoning, § 223, p. 982; 13 Am. Jur. 2d, Buildings, § 11, p. 276.

If a building permit is issued in violation of law, it confers no greater rights upon a permittee than an ordinance itself, for the permit cannot in effect amend or repeal an ordinance, or authorize a structure at a location prohibited by the ordinance. Its issuance by such a municipal officer is unauthorized and void. 101 C. J. S., Zoning, §§ 238, 239, 241, p. 1001 *et seq.* " . . . [A]dministrative agencies, in the exercise of their powers, may validly act only within the authority conferred upon them. . . ." *Pump and Well Company* v. *Taylor*, 201 Va. 311, 317, 110 S. E. 2d 525, 529 (1959). " 'We must construe the law as it is written. An erroneous construction by those charged with its administration cannot be permitted to override the clear mandates of a statute.' " *Richmond* v. *County of Henrico*, 185 Va. 176, 189, 37 S. E. 2d 873, 879 (1946).

In *Dumais* v. *Somerworth*, 101 N. H. 111, 115, 134 A. 2d 700,

702 (1957), the court said: " . . . the plaintiff argues that revocation of the permit after the plaintiff has expended more than three thousand dollars in reliance upon it would work unnecessary hardship upon him. . . In the case before us, so far as the permit issued to the plaintiff purported to authorize construction and use of a garage 'for the storage of trucks,' it had no warrant in the ordinance." See also *Lowry* v. *City of Mankato*, 231 Minn. 108, 117, 42 N. W. 2d 553, 559 (1950), where the court said: "A building permit issued in violation of a zoning ordinance by an official lacking power to alter or vary the ordinance is void, and the zoning regulation may be enforced notwithstanding the fact that the permittee may have commenced building operations."

In the case under review the application did set forth that the building would comply with the ordinances of the City. However, irrespective of this representation, the officials of the City could not have authorized a violation of the zoning ordinance and any permit issued for such a violation would be invalid. 62 C. J. S., Mun. Corps., § 227 (6) (c), p. 519.

Involved here are certain provisions of a zoning ordinance of the City, and also an ordinance which concerns signs, awnings and canopies. Zoning Ordinance No. 245 of the City of Newport News provides, in part, as follows:

\* \* \*

"ARTICLE II—DEFINITIONS

"For the purpose of this ordinance, certain terms and words are herewith defined as follows:

\* \* \*

"9. BUILDING. Any structure for the shelter, support or enclosure of persons, animals, chattels, or property of any kind.

\* \* \*

"44. STRUCTURE. Any construction or any production or piece of work artificially built up or composed of parts joined together in some definite manner.

\* \* \*

## "ARTICLE IX—PERMITTED USES OF LAND AND BUILD-INGS IN COMMERCIAL 1

\* \* \*

"B.   Setback in Commercial-1 District

\* \* \*

"2.   (a)   No building or structure shall be erected, re-constructed or altered for any other use permitted in this section so as to become nearer than 30 feet to the street line on which it faces except as hereinafter provided. . . ."

It is admitted that the canopy is constructed closer to the street line of Warwick Boulevard than 30 feet and is located in a Commercial-1 District. Clearly this canopy, with an overall width of 16 feet, a length of 75 feet, a height of 7 1/2 feet, with steel columns supporting an A-type roof, and affording protection to a 7-foot concrete passageway, is a "structure for the shelter . . . of persons . . . " and is a "construction or piece of work artificially built up or composed of parts joined together in some definite manner".

Therefore it is the type of structure prohibited within 30 feet of a street line in a Commercial-1 District as defined in the zoning ordinance of the City. However, Segaloff contends that the structure in question, "being a canopy", is not prohibited, but, on the contrary, is expressly permitted by the terms and provisions of an ordinance of the City of Newport News which is referred to as a "sign ordinance". The sign ordinance in question is Ordinance No. 69, and the pertinent parts thereof read as follows:

"SECTION 2.   DEFINITIONS

\* \* \*

"(1)   The term 'Sign' shall mean and include every sign, billboard, ground sign, wall sign, roof sign, illuminated sign, projecting sign, temporary sign, marquee, awning, canopy, . . .

\* \* \*

"SECTION 3.   PERMITS REQUIRED

"It shall be unlawful for any person to erect, repair, or re-

locate within the City of Newport News, any sign or other advertising structure as defined in this ordinance, without first obtaining an erection permit from the Building Inspector, or his authorized representative, and making payment of the fee required by Section 7 hereof. A copy of such permit shall be kept on the premises for public inspection during the prosecution of the work and until the completion of same.

\* \* \*

"SECTION 30. AWNINGS AND CANOPIES

"(a) Definitions.

\* \* \*

"(2) Canopy. A canopy as regulated by this ordinance shall include any structure other than an awning projecting over the sidewalk for the protection to an entrance to a building. Fixed canopies may be constructed over a sidewalk as a protection to an entrance of a building, provided such canopies are constructed of metal framework and covered with either metal or fire resisting cloth and approved by the Director of Public Works. . . .

\* \* \* -

"(6) Width, Canopies. No canopy shall be wider than three (3) feet on either side of the entrance to the building. . . ."

Segaloff argues that the canopy which they constructed between Warwick Boulevard and the La Vogue Store is the type of canopy contemplated and permitted by Section 30 (a) (2) of Ordinance 69 of the City. We cannot agree. The canopy described in the ordinance obviously refers to a type that projects over a sidewalk and is designed to afford protection to an entrance to a building in somewhat the same manner as is afforded by an awning. Awnings are usually lowered or unfolded during the daytime and raised or folded at evening. Since canopies are usually fixed, remain stationary during off-business hours and when streets are deserted, the requirement is found that they be constructed of metal or fire-resisting cloth and approved by the Director of Public Works.

Canopy is variously described and innumerable structures and devices are called by that name. A common definition describes it

as a covering usually for protection or shelter. A frequent use is as a covering of cloth suspended from the four high posts of a bed. It is ascribed to the covering carried on poles over an exalted personage or sacred object. A canopy can be both temporary or permanent cover providing shelter and decoration, as over a door or window. An awning or marquee often stretching from doorway to curb, or covering a section of a grandstand, is called a canopy. The transparent enclosure over an airplane cockpit is called a canopy, as is the lifting or supporting surface of a parachute.

The plans for the La Vogue Store provided for numerous "canopies" throughout the store. Obviously they are not the same as the canopy which is the structure under dispute, or the type of canopy referred to in Ordinance 69. A great deal of the evidence deals with a description of the structure and whether it is in fact a canopy. Manifestly it can be and is best so described. It can also be called a marquee, a covered passageway, or a covered entrance. If it were located on a farm it would probably be called an open shed.

The narrow issue for our decision is whether the canopy under consideration is of the type regulated, described and permitted in Ordinance 69 adopted by the City. A careful reading of this ordinance plainly shows that it is not. It is a different type, designed to accomplish a different purpose, and erected on Segaloff's private property. It is not over a city sidewalk. It is to protect the passage of customers over a private walkway or passageway. It does not lead to an entrance.

We conclude that the canopy in question is a structure within the definition of the zoning ordinance of the City. Its erection nearer than 30 feet to the street line in Commercial-1 District is prohibited. It is not the type or kind that is described in, or regulated by, the sign ordinance of the City.

Having disposed of this case on its merits, it is not necessary that we consider the City's motion to dismiss the appeal.

For the reasons stated, we affirm the decree of the trial court.

*Affirmed.*