## Richmond

POTOMAC ELECTRIC POWER COMPANY v. DOUGLAS B. FUGATE, STATE
HIGHWAY COMMISSIONER OF VIRGINIA.

WASHINGTON GAS LIGHT COMPANY v. DOUGLAS B. FUGATE, STATE
HIGHWAY COMMISSIONER OF VIRGINIA.

April 26, 1971.

Record Nos. 7390 and 7391.

Present, Snead, C.J., Carrico, Gordon, Harrison, Cochran and Harman, JJ.

*John S. Stump (Angus H. Macaulay; Boothe, Dudley, Koontz,
Blankingship & Stump; Mays, Valentine, Davenport & Moore*, on
brief), for plaintiff in error in Record Nos. 7390 and 7391.

*Randolph E. Trow, Jr. (Andrew P. Miller, Attorney General,* on brief), for defendant in error in Record Nos. 7390 and 7391.

CARRICO, J., delivered the opinion of the court.

In separate but similar motions for declaratory judgment, Potomac Electric Power Company and Washington Gas Light Company, the plaintiffs, sought declarations of rights against Douglas B. Fugate, State Highway Commissioner of Virginia, the defendant. The controversy presented by the motions centered around the defendant's direction to the plaintiffs to remove their utility facilities from land which had been acquired by the defendant for construction of Interstate Highways 66 and 95 in Arlington County. The motions prayed for declarations that the defendant be required to reimburse the plaintiffs for the costs of such relocations.

The two actions were consolidated and heard by the trial court upon a stipulation of facts. The court ruled that the plaintiffs were not entitled to the relief sought and dismissed the motions for declaratory judgment. We granted the plaintiffs writs of error.

Prior to instituting the proceedings in the trial court, the plaintiffs had filed in the United States District Court for the Eastern District of Virginia civil actions seeking relief similar to that sought here. A three-judge court was empaneled, but the court decided to abstain to permit the plaintiffs to seek and obtain an authoritative determination of applicable state law.

Here, the plaintiffs base their claims for relief upon the provisions of the Federal-Aid Highway Act, 23 U.S.C. §§ 101, *et seq.* (1956), and what they term the "inter-relationship" of those provisions and Virginia law. They rely upon the fact that under the Highway Act, the federal government participates financially in the interstate highway program to the extent of 90 percent of the cost of construction of interstate roads, which may include reimbursement to states for payment to public utilities of the non-betterment costs of relocating facilities unless:

". . . payment to the utility violates the law of the State. . . ." 23 U.S.C. § 123.

Thus, the plaintiffs say, the question for decision is whether payment to them by the defendant of their relocation costs would violate the law of Virginia.

However, the question to be decided as we perceive it is not whether payment to the plaintiffs would *violate* Virginia law but, considering the mandatory nature of the relief sought by the plaintiffs, whether such payment is *commanded* by our law. And, in the resolution of that question, the federal aid statute plays no part since it is in permissive terms, making federal funds available in a case such as this only when public utility relocation costs are compensable under state law.

■ In deciding whether payment to the plaintiffs is required under Virginia law, it becomes pertinent to determine the nature of the rights held by them with respect to the land upon which their facilities were installed. Not in dispute are facilities located (1) in easements owned by the plaintiffs, and (2) in existing highway rights-of-way under certain permits issued by the State Highway Department since 1958. Costs of removing facilities in the first category are conceded by the defendant to be compensable, and similar costs in the second category are conceded by the plaintiffs to be not compensable.

In dispute, rather, are facilities installed (1) in public streets and highways under permits issued by the Highway Department prior to 1958 and by the County of Arlington, (2) on federally-owned land under permits issued by agencies of the federal government, and (3) on railroad property under permits issued by several railroad companies. While the permits vary in their terms, none creates an easement or other interest in land. And none contains a provision that the plaintiffs are to be compensated if removal of their facilities is required.

This being true, we think the trial court accurately characterized the nature of the interests involved here when it ruled that the "rights [the plaintiffs] have to place their facilities are not property rights [and they] would have to remove and relocate on request of the grantor in each case." So what we are dealing with are mere licenses, revocable at will, permitting installation of the plaintiffs' utility facilities.

This brings us to consideration of the arguments advanced by the plaintiffs in support of their claims to compensation. First, they rely upon several Virginia statutes dealing with highways, now found in Title 33.1 of the Code but contained in Title 33 at the time this controversy arose.

Code § 33.1-96, formerly § 33-58, cited by the plaintiffs, provides

that the Highway Commissioner is vested with power, under certain conditions, to remove from property acquired for highway purposes and to relocate at his own expense the facilities of a public utility company occupying the property. However, that power may be exercised only when the utility company "owns any land or any easement, right-of-way or other interest in land." As has been demonstrated, the plaintiffs do not own the type interest specified in the quoted language, so the Code section can be of no comfort to them.

The plaintiffs also cite Code §§ 33.1-12(5), 33.1-49, 33.1-50, 33.1-215, and 33.1-216, formerly §§ 33-12(5), 33-36.2, 33-36.3, 33-130, and 33-131, respectively. The effect of these Code sections is to place in the hands of highway authorities the power, and to impose upon them the duty, to so construct the interstate highway system in Virginia as to take full advantage of available federal funds. The plaintiffs argue that these Code sections, requiring the defendant to take full advantage of federal aid, when considered together with the federal legislation which "directs Federal reimbursement of state relocation payments when not contrary to state law," require that payment be made for the relocation costs involved in this case.

This argument, as the defendant points out, is certainly circular in nature and, moreover, overlooks the common law rule, recognized in Virginia, imposing upon a utility the burden of relocating facilities at its own cost when it occupies highway property under rights of the nature held by the plaintiffs. *Anderson* v. *Water Company*, 197 Va. 36, 44-5, 87 S.E.2d 756, 762 (1955). The Code sections requiring the defendant to take advantage of federal aid do not create an exception to the common law rule or provide the plaintiffs a new right to relief.

The plaintiffs say, however, that the legislature has made such an exception in Code §§ 33.1-55 and 33.1-56, formerly §§ 33-36.9 and 33-36.10, respectively. The plaintiffs maintain that in these Code sections, the legislature has declared public utility relocation costs involved in the interstate highway program "to be a cost of highway construction."

But, Code § 33.1-55 applies only to utility facilities located "within cities or towns" and § 33.1-56 only to publicly-owned facilities located in counties. The facilities of the plaintiffs are located in a county, not a city or town, and they are privately, not publicly, owned, so they qualify under neither category.

The plaintiffs next argue that they are entitled to compensation under a general policy established and followed by the defendant

with respect to payment of relocation costs of other utility companies. The plaintiffs say that under the policy, the defendant has compensated other utility companies occupying highway property under rights similar to those involved here. If those payments do not violate the law of the state, assert the plaintiffs, then any such violation in this case "must arise from a source other than the nature of the rights of Plaintiffs."

However, the stipulated testimony of an official of the Highway Department showed that the defendant generally pays the cost of relocating utility facilities when such facilities are in place *under prior vested right.* The plaintiffs' facilities, although installed prior in time to construction of the interstate highways in question, were not in place under *vested* right. So the plaintiffs are not similarly situated to those utility companies receiving compensation under the defendant's general policy.

The plaintiffs also rely upon two exceptions to the defendant's general policy. The first stems from the provisions of Code §§ 33.1-55 and 33.1-56, relating to payment in interstate highway construction of relocation costs of utility facilities in cities or towns and of publicly-owned facilities in counties. But, as we have already ruled, the plaintiffs do not qualify under those statutes.

The other exception relied upon by the plaintiffs arises from the execution of certain agreements by the defendant and other utility companies, providing for state participation in the costs of utility relocation. Suffice to say, the utility companies entering into those agreements have undertaken obligations which the plaintiffs have not undertaken. And, if payment under those agreements constitutes a violation of state law, a point we do not decide, the plaintiffs cannot convert such illegality into a legal requirement that they be compensated in this case.

■ Finally, the plaintiffs contend they are entitled to be compensated because they have suffered damage to their property within the meaning of § 58 of the Virginia Constitution.[1] Here again, however, the nature of the rights held by the plaintiffs becomes crucial.

Although this court has not precisely so stated in the many cases involving interpretation of § 58, we think the tenor of our prior decisions is that the word "damaged" as used in that section means damaged in the legal sense, that is, damage resulting from a legal

---

[1] § 58. " . . . The General Assembly . . . shall not enact any law whereby private property shall be taken or damaged for public uses, without just compensation. . . ."

invasion, as opposed to a mere physical invasion, of property or property rights. The constitutional requirement of compensation does not, as the plaintiffs' argument suggests, import the necessity of payment in every case where financial loss, giving the word "damage" its ordinary rather than its legal meaning, might be shown as the result of a public undertaking. Unless rights identifiable as property rights are involved, the loss may be *dammum absque injuria*.

The rights here involved do not constitute property or property rights. Where the plaintiffs occupied public highways and streets, they did so subject to the right of highway authorities, in the exercise of the police power, to require them to relocate at their own expense. Where they occupied other property, public or private, they did so subject to the right of each of their licensors to oust them at will and without liability. The defendant, having succeeded to ownership of that other property, succeeded as well to the same right. Hence, the physical invasion by the defendant, in the form of displacement of the plaintiffs' facilities, did not result in damage in the constitutional sense.

What has been said distinguishes the cases of *Town of Cape Charles* v. *Fish Co.*, 200 Va. 667, 107 S.E.2d 436 (1959), and *Richmond* v. *Williams*, 114 Va. 698, 77 S.E. 492 (1913), relied upon by the plaintiffs. In each of those cases, the personal property damaged or required to be removed by public undertaking was in place under a leasehold right. Thus, as incidental to the damaging of a property right, *i.e.*, the leasehold interest, compensation for the costs of relocating the personal property was constitutionally required.

We are of opinion that the trial court correctly declared the rights of the plaintiffs *vis-à-vis* the defendant. Accordingly, the judgments appealed from will be affirmed.

*Affirmed.*