**POTOMAC ELECTRIC POWER COMPANY, a District of Columbia and a Virginia Corporation, Plaintiff,**

v.

**Douglas B. FUGATE, State Highway Commissioner of Virginia, Defendant.**

**WASHINGTON GAS LIGHT COMPANY, a Virginia Corporation, Plaintiff,**

v.

**Douglas B. FUGATE, State Highway Commissioner of Virginia, Defendant.**

**Civ. A. Nos. 4996, 4997.**

United States District Court, E. D. Virginia, Richmond Division.

Argued Feb. 15, 1972.

Decided April 10, 1972.

**888**

Angus H. Macaulay, Richmond, Va. (Mays, Valentine, Davenport & Moore, Richmond, Va., on brief), and John S. Stump, Alexandria, Va. (Boothe, Prichard & Dudley, Alexandria, Va., on brief), for plaintiffs.

Anthony F. Troy and Stuart H. Dunn, Asst. Attys. Gen. of Va. (Andrew P. Miller, Atty. Gen. of Virginia), on brief for defendant.

Before BUTZNER, Circuit Judge, and LEWIS and MacKENZIE, District Judges.

BUTZNER, Circuit Judge:

Potomac Electric Power Company and Washington Gas Light Company brought this action against the Virginia State Highway Commissioner to obtain a declaration that they are entitled to reimbursement for the non-betterment costs of utility relocations [1] caused by the construction of interstate highways in Arlington County, Virginia and for injunctive relief. We hold that the commissioner's refusal to reimburse the utilities denies them equal protection of the laws in violation of the fourteenth amendment.

The utilities initially brought this action in 1967. Because the rights granted in the permits under which the utilities located their lines had not been defined and pertinent state statutes had not been construed by Virginia courts, we abstained while the parties sought a declaration of state law. Potomac Electric Power Co. v. Fugate, 275 F.Supp. 566 (E.D.Va.1967). The utilities then filed suit in a state court and appealed its adverse decision to the Virginia Supreme Court, reserving determination of the federal constitutional questions they had raised, however, in conformity with England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S. Ct. 461, 11 L.Ed.2d 440 (1964).

The utility lines that are the subject of this litigation were installed in public streets and highways in the county under permits that contained no express provisions for the costs of relocation, and on federal lands and railway rights-of-way under permits that required the utilities to relocate at their own expense upon request of the grantors.[2] The Supreme Court of Virginia ruled that all

---

1. Referring to Va.Code Ann. §§ 33.1–55, –56 (Repl. vol. 1970), *infra* note 3, the Attorney General of Virginia defined non-betterment costs as "the cost of relocation or removal after 'deducting therefrom any increase in the value of the new facility and any salvage value derived from the old facility' . . . ." Op.Va.Att'y Gen. 12 (Sept. 15, 1966).

2. The state concedes it must pay relocation costs for lines installed on irrevocable easements from private owners. The utilities make no claim for relocation costs for lines installed within highway rights-of-way under permits in which the utilities expressly agreed to relocate at their own expense.

of these permits were mere licenses, revocable at will, that created no interest in land. It held that the companies, therefore, were not entitled to compensation for relocation under either the Virginia Constitution or its statutes. Potomac Electric Power Co. v. Fugate, 211 Va. 745, 180 S.E.2d 657 (1971). The declaration of the Virginia Supreme Court concerning the nature of the permits and its interpretation of the state's constitution and statutes is, of course, binding on us. There remains for our consideration only the utilities' fourteenth amendment claims, which were not decided in the state suit.

Because the facilities could have been displaced at the utilities' expense before the land on which they were located was expropriated for the interstate highway system, the highway department contends it can now order their removal with impunity. The difficulty with the department's position is that Virginia compensates utilities for relocation of identical facilities, installed under identical permits, and displaced under identical circumstances in cities and towns.[3] The lines involved in this suit do not qualify for relocation costs under the

statute only because they are located in a county.

■ Perhaps the state could deny reimbursement to all utilities which installed their lines under similar permits, but when it determines to pay some of them and not others its choice of which to pay must conform to the fourteenth amendment. See Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L. Ed.2d 1485 (1957); cf. Griffin v. Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956). The Virginia statute which draws the distinction between utility lines located in a city or town and similar lines located in a county is presumptively constitutional, McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), but this presumption may be rebutted by showing the classification lacks a rational basis. Mr. Chief Justice Burger succinctly restated the rule in Reed v. Reed, 404 U.S. 71, 75, 92 S.Ct. 251, 253–254, 30 L. Ed.2d 225 (1971):

"In applying [the equal protection] clause, this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons

---

3. The parties stipulated that in cities and towns the state pays all costs of utility relocation regardless of the location of the utilities. Payment is made pursuant to Va.Code Ann. § 33.1–55, which provides:
    "Relocation or removal of utility facilities.—Whenever the Commission shall determine that it is necessary that any tracks, pipes, mains, conduits, cables, wires, towers or other structures, equipment and appliances (herein called 'facilities') of any utility as herein defined, in, on, under, over or along existing streets which are to be included within any project on the Interstate System within cities or towns should be relocated or removed, the owner or operator of such facilities shall relocate or remove the same in accordance with the order of the Commission. The cost of such relocation or removal, as herein defined, including the cost of installing such facilities in a new location or locations, and the cost of any lands, or any rights or interest in lands, and any other rights, required to accomplish such

relocation or removal, shall be ascertained and paid by the Commission as a part of the cost of such project.
    For the purposes of this section, the term 'utility' shall include publicly, privately, and cooperatively owned utilities and the term 'cost of relocation or removal' shall include the entire amount paid by such utility properly attributable to such relocation or removal after deducting therefrom any increase in the value of the new facility and any salvage value derived from the old facility.
    The cost of relocating or removing utility facilities in connection with any project on the Interstate System within cities or towns is hereby declared to be a cost of highway construction."
    Section 33.1–56 authorizes reimbursement to certain publicly owned utilities whose facilities must be relocated in counties. The companies cannot qualify under this section because they are investor-owned.

in different ways. . . . The Equal Protection Clause of that Amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' . . ."

Section 33.1–55 pertains only to the relocation costs of utilities disrupted by construction of the interstate highway system,[4] and it does not apply to utility lines displaced by other streets and highways in cities, towns, or counties.[5] Thus, it is apparent that the sole object of this statute is to facilitate construction of Virginia's portion of the interstate highway system. There is, however, no relevant distinction between the construction, operation, and maintenance of the interstate highway system in cities and towns on the one hand and in counties on the other. The federal government pays 90 percent and the state 10 percent of the costs of interstate highway projects.[6] Cities, towns, and counties are not required to contribute to the payment of these costs. Location,

design, and scheduling of construction are controlled by the federal and state governments, not by the localities. City, town, and county officials play no part in advertising the projects for bid, selecting contractors, or approving the finished work. Neither municipal nor county officials determine which utility lines must be relocated. All of these aspects of the interstate highway system are supervised by federal and state employees.

Moreover, there is no significant demographic difference between many of Virginia's counties and its cities and towns. Arlington County, for example, is just as urban in all material respects as its neighboring city of Alexandria. Nor was there presented proof that costs of relocation in cities and towns differ significantly from these costs in counties.

No legislative history explaining the classification has been called to our attention, and apparently none exists. Counsel for the department ventured the opinion that the difference in treatment resulted from the legislature's intention to relieve city and town consumers from bearing relocation costs, other than indirectly through highway tax funds, while placing these costs on county consumers through the utility rate structure. We deem this speculation unrealistic, and the argument falls of its own weight.

---

4. Section 33.1–55 is a part of Va.Code Ann. ch. 1, art. 3, which deals solely with the interstate highway system. *See also*, Op.Va.Att'y Gen. 8 (Sept. 15, 1966).

5. We caution that our inquiry concerns only the relocation costs incurred in construction of the interstate highway system. *See*, State ex rel. City of Albuquerque v. Lavender, 69 N.M. 220, 365 P.2d 652 (1961) ; Pack v. Southern Bell Tel. & Tel. Co., 215 Tenn. 503, 387 S.W. 2d 789 (1965) ; State ex rel. Appalachian Power Co. v. Gainer, 149 W.Va. 740, 143 S.E.2d 351 (1965).

6. 23 U.S.C. § 120(c) (1970) establishes the 90–10 percent formula. Section 123 (a) deals specifically with utility relocation costs. It provides in part:

"When a State shall pay for the cost of relocation of utility facilities necessitated by the construction of a project on the Federal-aid primary or secondary systems or on the Interstate System, including extensions thereof within urban areas, Federal funds may be used to reimburse the State for such cost in the same proportion as Federal funds are expended on the project. Federal funds shall not be used to reimburse the State under this section when the payment to the utility violates the law of the State or violates a legal contract between the utility and the State. . . ."

There is no justification for treating these consumers differently, Also at trial, it was conceded that utility rates are generally established on a regional basis embracing cities, towns, and counties. This fact in itself is sufficient to rebut the department's argument.

■ We conclude, therefore, that the type of political subdivision through which an interstate highway runs is irrelevant to the establishment of the interstate highway system in Virginia and to the relocation of utility lines for interstate projects. Classifying disrupted utility lines according to their location in cities, towns, or counties is arbitrary and bears no "fair and substantial relation" to the legislation authorizing construction of the Virginia segments of the interstate highway system. *See* F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920). No rational basis exists for reimbursing utilities which are required by interstate highway construction to relocate their lines in cities and towns while at the same time denying reimbursement under identical circumstances for lines relocated in counties. Consequently, § 33.1–55 of the Virginia Code unconstitutionally denies the plaintiffs equal protection of the laws. Reed v. Reed, 404 U.S. 71, 75, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). *See also,* Oregon v. Mitchell, 400 U.S. 112, 150, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970) (appendix to opinion of Douglas, J.). The Virginia Highway Commissioner must, therefore, reimburse the companies for the relocation of their lines in counties on the same basis that he reimburses utilities for the relocation of similar lines in cities and towns.

Because we have held that the utilities are entitled to judgment under the equal protection clause of the fourteenth amendment, we find it unnecessary to consider the argument that they are also entitled to prevail under the due process clause.