574 F.2d 1163
 POTOMAC ELECTRIC POWER COMPANY, a District of Columbia and
Virginia Corporation, and Washington Gas Light
Company, a Virginia Corporation, Appellees,
v.
Douglas B. FUGATE, State Highway Commissioner of Virginia, Appellant.
 Nos. 76-2068, 77-1481.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 7, 1977.
Decided March 30, 1978.
 
 Anthony F. Troy, Atty. Gen., Richmond, Va. (Walter A. McFarlane, Deputy Atty. Gen., John S. Morris, III, Asst. Atty Gen., Richmond, Va., on brief), for appellant.
 John S. Stump, Alexandria, Va. (Boothe, Prichard & Dudley, Alexandria, Va., Angus H. Macaulay, Mays, Valentine, Davenport & Moore, Richmond, Va., on brief), for appellees.
 Before HAYNSWORTH, Chief Judge, and WIDENER and HALL, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 The State Highway Commissioner of Virginia appeals from an order requiring the Commonwealth to compensate Potomac Electric Power Company and Washington Gas Light Company (utilities) for relocating certain facilities located in Arlington County, Virginia, the relocation of which was occasioned by Interstate Highway construction. He also appeals from a denial of relief under FRCP 60(b).
 
 
 2
 The case has a lengthy judicial history in State as well as federal courts.[1] Of significance here is the interpretation of the last opinion of the district court and its order of April 10, 1972.
 
 
 3
 Virginia would not compensate utilities for the relocation of facilities located in counties, but it did reimburse for the removal of facilities located in cities. The three-judge district court held that there was no rational basis for distinguishing between the facilities in such different political subdivisions and that the Highway Commissioner must reimburse the utilities "for the relocation of their lines in counties on the same basis that he reimburses utilities for the relocation of similar lines in cities or towns." Potomac Electric Power Co. v. Fugate, 341 F.Supp. 887, p. 891 (E.D.Va.), aff'd 409 U.S. 943, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972). To that extent it held unenforceable literal compliance with § 33.1-55 of the Virginia Code which authorized such payments in cities and towns but not in counties. The court's order of April 10, 1972 enjoined the appellant from "taking possession of any part of the plaintiffs' facilities for construction of the interstate highway system without reimbursing them for their non-betterment relocation costs," stating that "(r)eimbursement shall be on the same basis as reimbursement for relocation of similar facilities in cities and towns."
 
 
 4
 In compliance with that order, the Highway Commissioner paid the appellees $210,720.89 and agreed to pay $1,235,203.14 pending an audit. Such sums were not for facilities located on federal lands and on railway rights-of-way. However, the utilities also demanded reimbursement for facilities located on federal lands and railroad rights-of-way, and the Commissioner took the position that he was not authorized to pay for the relocation of such facilities, whether they were located in counties or in cities or towns.
 
 
 5
 When the Highway Commission refused to pay, the utilities moved the district court to enforce the April 10, 1972 order by requiring the Commission to compensate for such facilities. The court ruled that the April 10, 1972 order required reimbursement for facilities in counties on the same basis as those in cities or towns, saying that the Commission had stipulated the testimony of the Assistant Right-of-Way Engineer that it reimbursed for all displaced city and town facilities, regardless of location; and that it therefore had to pay for the facilities in question.
 
 
 6
 Initially, we observe that the order of April 10, 1972 requires only that the Commonwealth compensate for facilities in counties on the same basis as it reimburses for relocation of similar facilities in cities and towns. The district court, in its enforcement order, appears to have this rule in mind, as well it should have: the controversy was, after all, one regarding equal protection.[2] Hence, the ultimate issue which must be decided is whether the Commonwealth would, and could, compensate for the relocation of such facilities on federal lands or railroad rights-of-way which were located in cities and towns. If not, the order of the district court requiring the payments in question should be reversed.
 
 
 7
 Thus, we should know whether the Highway Commissioner is authorized to pay for the removal of such facilities in cities and towns. The statute authorizing payment for non-betterment relocation of private utility facilities may indicate that those payments are outside the authority of the Commissioner. Read literally, Va.Code Ann. § 33-36.9 (now § 33.1-55) limits the Commissioner's authority to pay for facilities "in, on, under, over or along existing streets," and does not in terms allow payment for facilities found on federal lands and railroad rights-of-way.
 
 
 8
 The utilities and the district court rely on a stipulation made by the Commissioner that the Assistant Right-of-Way Engineer for the Virginia Department of Highways would testify that the Department's practice was to compensate for the relocation of all such facilities, regardless of their location.[3] However, if § 33.1-55 is given a literal interpretation as urged by the Commission, the stipulation may very well lack controlling weight. That a Highway Commission policy, even if it existed, which is now denied, could eradicate the force of a statute, and produce State appropriations to pay for the relocation seems doubtful at best. Also doubtful is that the agency could estop the Commonwealth, through the stipulation, from asserting the illegality of the policy under the Virginia statute. McComb v. Homeworkers' Handicraft Association, 176 F.2d 633 (4th Cir. 1949); Segaloff v. City of Newport News, 209 Va. 259, 163 S.E.2d 135 (1968).
 
 
 9
 The practice and policy of the Commissioner will, however, be of significance in interpreting the statute. Rountree Corporation v. City of Richmond, 188 Va. 701, 51 S.E.2d 256 (1949). The utilities contend that § 33.1-55 should not be given the literal interpretation urged by the Highway Commission; rather, it asserts that the Commission, apart from the statute, has always possessed the authority to reimburse utilities for the removal of facilities, except for those facilities located in a street or road. Section 33.1-55, they argue, was enacted to fill that void by extending the Commission's authority over that category of facilities.[4]
 
 
 10
 Unfortunately, this court does not have before it sufficient information on which to base a definitive interpretation of the statute, or to determine the merits of the case. The Commission asks for the opportunity to present evidence concerning its practices in reimbursing facilities located in the cities and towns, and we believe that such evidence, as well as evidence on that point from the utilities, should be taken prior to a final determination of the case.
 
 
 11
 Accordingly, we remand the case to the district court for the taking of evidence on the question of the Commission's policies and practices in the reimbursement of utilities for the relocation of facilities in cities and towns. Those policies may be relevant to, but not necessarily conclusive in, the interpretation of § 33.1-55.[5] See Segaloff, supra. If the Commissioner reimburses for all city and town relocations, regardless of whether the facility is "in, on, over or along existing streets," and that policy is not contradictory of § 33.1-55, the Commissioner must, in accordance with the April 10, 1972 order, reimburse the utilities for the removal of the facilities in question. However, if the statute allows the Commissioner to compensate only for facilities "in, on, under, over or along existing streets," and he is not otherwise authorized so to do, the Commissioner cannot reimburse for facilities in cities and towns located on federal land or railroad rights-of-way,[6] and the April 10th order should not be construed to require the Commonwealth to compensate for such facilities when located in a county.
 
 
 12
 The opinion of the district court enforcing its 1972 order recognizes that the question of facilities located on federal lands and on railway rights-of-way has been in the case from the beginning, as well as the difference in payment of relocation expenses for facilities in cities and towns on the one hand and counties on the other. Despite this, however, neither the opinion of the three-judge court in 341 F.Supp. 887 nor its order of even date giving effect to that opinion made any such distinction nor took the three categories into account, although they were before the court. In addition, we cannot say which of the many questions mentioned in our opinion here were raised before the three-judge court. We do not think the opinion of the three-judge court meant to require the Highway Commission to make payments for relocation of facilities located on federal lands and railway rights-of-way if such were not validly made under state law in cities and towns. As the Supreme Court of Virginia pointed out in its opinion earlier referred to, it decided only the question of whether the payments were mandatory, not whether they were permitted. This will be one question before the district court on remand, for if such payments were permitted, although not mandatory, and were made as a practice by the Highway Commission, the Commission may very well be bound by the law of the case unless relief under FRCP 60(b) is proper.
 
 
 13
 In all events, the sole evidence in this record supporting the position of the utilities is the stipulation as to what the testimony of the Assistant Highway Engineer would be. In the face of the fact that this testimony apparently is contradicted by the resolutions of the State Highway Commission of October 15, 1953 and December 8, 1960, and may well be in contradiction of Virginia Code § 33.1-55, we think the record is insufficient to support an order requiring payment at this time, and that before the 1972 order of the three-judge court should be enforced to require such payments, more evidence must be taken.
 
 
 14
 Because the case must be remanded for the taking of more evidence in all events, we do not decide whether or not the Highway Commission is entitled to relief under FRCP 60(b). The district court should reconsider that question on remand if presented again by the State Highway Commission on the whole record.
 
 
 15
 The judgments of the district court are vacated, and the case is remanded for proceedings not inconsistent with this opinion.
 
 
 16
 VACATED and REMANDED.
 
 
 
 [1]
 In Potomac Electric Power Company et al. v. Fugate, 275 F.Supp. 566 (E.D.Va.1967), a three-judge federal district court abstained. The Virginia Supreme Court next decided one aspect of the case in Potomac Electric Power Company v. Fugate, 211 Va. 745, 180 S.E.2d 657 (1971). The three-judge federal district court then filed the opinion from which this appeal grows in 341 F.Supp. 887 (E.D.Va.1972), which was affirmed by order without opinion in 409 U.S. 943, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972)
 
 
 [2]
 The district court did not reach the due process claim raised by the utilities. 341 F.Supp. at p. 891. However, the Supreme Court of Appeals of Virginia considered the due process question under the Virginia Constitution and found that the utilities possessed "mere licenses, revocable at will, permitting installation of the plaintiffs' utility facilities." Potomac Electric Power Co. v. Fugate, 211 Va. 745, 180 S.E.2d 657, at 658 (1971). The Highway Commission does not contend that it is not empowered to compensate for the removal of facilities where the utility possesses a vested property right
 
 
 [3]
 Actually, the Commissioner stipulated that Albert F. Laube, Assistant Right-of-Way Engineer for the Highway Commission, would testify that he was fully acquainted with all of the Commission's utility policies and that in cities and towns the state "pays all costs of all utility relocations, regardless of the location of the utilities, and this payment is made pursuant to § 33-36.9 of the Code of Virginia (1950), as amended."
 
 
 [4]
 On the record before us and the opinions of the other courts which have considered the matter, this argument is not supported, although we do not express an opinion that it is unsupportable, or that the Highway Commissioner's presently urged construction of the statute is correct
 The record shows that on October 15, 1953 the State Highway Commission adopted a policy under which the relocation of utilities due to construction of the primary or secondary road system within towns and cities was to be without expense to the Commonwealth.
 On October 26, 1960, a modification to this October 15, 1953 policy was adopted which does not appear in the record, but the October 26th modification was rescinded by a resolution of the Highway Commission dated December 8, 1960 which modified the October 15, 1953 resolution and provided for participation by the Highway Commission in the relocation of utilities on all projects other than Interstate within towns and cities except upon public property dedicated or acquired for street or road purposes.
 In 1956, in the meantime, Congress had provided for the completion of the Interstate Highway System under P.L. 627, 84th Congress, 2nd Session, 70 Stat. 374, and, in response to that, in 1958, the General Assembly enacted Code Sections 33-36.1, et seq., for participation in the Interstate System. Included in that Virginia enactment was a provision for the relocation of utilities "in, on, under, over or along existing streets" within any project on the Interstate System within cities and towns. Va.Code § 33-36.9 (now § 33.1-55). Until that time, no policy or practice of the Highway Commission brought to our attention, except the stipulated testimony mentioned just below, provided for payment by the Commission of any relocation costs at issue here. There may have been such, but the parties do not present it.
 The difficulty which has arisen here may be because of a footnote in the opinion of the district court concerning the stipulation of the testimony of the Assistant Right-of-Way Engineer. The stipulation is what he would testify to, not what was the fact. Although this is recognized by the district court in its current order here under review, in the opinion of the three-judge court, 341 F.Supp. 887, at 889, note 3, instead of reciting the stipulation as what the Engineer would testify to, the stipulation recites the substance of the testimony as a proven fact.
 The utilities point out that the stipulation was resubmitted to the court in 1971. To us this is inexplicable since the Highway Commission had been taking the opposite position at least since 1967, for the stipulated testimony of the Engineer could be considered in contradiction of the literal terms of the statute, § 33.1-55 (formerly § 33-36.9), as well as in contradiction of the resolutions of the State Highway Department of October 15, 1953 and December 8, 1960.
 
 
 [5]
 Compare United States v. Jackson, 280 U.S. 183, at p. 193, 50 S.Ct. 143, 74 L.Ed. 361 (1930), with Hancock Co. v. Stephens, 177 Va. 349, 14 S.E.2d 332, at p. 334 (1941)
 
 
 [6]
 No question is made of any such facility located in a street on federal lands or a railway right-of-way