447 S.E.2d 546

**Ray O. HARRISON, Plaintiff Below, Appellee,**

v.

**TOWN OF ELEANOR, a Municipal Corporation, Defendant Below, Appellant.**

**No. 21886.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 12, 1994.

Decided July 15, 1994.

Harvey D. Peyton, Nitro, for appellee.

Christopher J. Heavens, McQueen & Brown, Charleston and Mark A. Sorsaia, Sorsaia & Garvin, Hurricane, for appellant.

WORKMAN, Justice:

This case is before the Court upon the appeal from the January 28, 1993, final order of the Circuit Court of Putnam County denying the Appellant, the Town of Eleanor (hereinafter referred to as Eleanor), its motion for new trial or judgment notwithstanding the verdict, following a jury award of $10,000 in damages to the Appellee, Ray O. Harrison. The Appellant argues that the following assigned errors were committed by the lower court: 1) the lower court was legally required to issue a summary judgment ruling on questions of law and committed plain error in allowing the civil action to be tried to a jury since all of the questions presented were questions of law; 2) the lower court committed plain error by not ruling on the constitutional validity of the subject ordinance; 3) the failure of the lower court to rule, as a matter of law, that the subject ordinance was a building ordinance passed in

compliance with West Virginia Code § 8–11–4 (1990) constitutes plain error; 4) the Appellant was entitled to summary judgment on the Appellee's prayer for damages since it was based upon an invalid contract theory; 5) the Appellant was entitled to summary judgment or directed verdict on the issue of damages since the Appellee's prayer for damages was based upon an invalid contract theory and the evidence presented on this in discovery and at trial did not meet the legally-mandated standard of reasonable certainty; 6) an erroneous jury instruction given by the lower court is presumed to be prejudicial to the party it is offered against; 7) the lower court's refusal to grant the Appellant's special questions to the jury created a conflict in instructions to the jury which clearly constituted reversible error; and 8) the lower court's refusal to grant the Appellant's first jury instruction constitutes reversible error.[1] Having reviewed the parties' briefs, arguments and all other matters submitted before the Court, we conclude that the lower court erred in allowing questions of law to be decided by the jury, and in failing to resolve the questions of law as to whether the disputed ordinance was either a building ordinance or a zoning ordinances. Accordingly, we reverse.

## I.

On June 20, 1973, the Appellee and his wife purchased a .31 acre triangular parcel of land in Eleanor, West Virginia. The land was unimproved at the time of the purchase, but the Appellee planned to construct apartment units on the property.

On January 29, 1986, the Appellee began developing his property by applying for two building permits with the Appellant. Included in the application supplied by the Appellant was the following statement set forth in compliance with a 1984 amendment to Eleanor Ordinance 75–2 (also referred to as Ordinance No. 75–2), which essentially placed a twenty-foot setback requirement from the street and abutting properties on the construction of residential dwellings:

> ALL STRUCTURES TO BE 10 FOOT (sic) FROM REAR AND SIDE PROPERTY LINES AND 20 FOOT (sic) FROM STREET RIGHT OF WAY ON PROPERTY WEST OF THE 10 FOOT EASEMENT ON F STREET. PROPERTY EAST OF THE 10 FOOT EASEMENT ON F STREET WILL COMPLY WITH THE 25 FOOT FRONT SETBACK AS SET FORTH BY THE DEEDS OR ANY OTHER AREA WHERE THE DEEDS SPECIFY OVER THE 20 FOOT MINIMUM SET BACK.

After submitting the applications, the Appellee's property was inspected by Mr. Ray McClanahan, the building inspector for Eleanor. Mr. McClanahan issued two separate building permits, dated January 29, 1986, for the Appellee's proposed construction. At the time the permits were issued, the Appellee tendered to the Appellant the required payment for the permits.

By letter dated February 4, 1986, Charles A. Jeffries, Mayor of Eleanor, advised the Appellee that the Appellant could not accept the applications or payment tendered by the Appellee for the building permits since the Appellee had "not complied with Ordinance No. 75–2." Mr. Jeffries enclosed a copy of said ordinance and advised the Appellee that he could appear before the Town Council if he had any questions. The Appellee appeared before the Town Council, but was unsuccessful in his attempts to rescind the revocation of the building permits.

The Appellee instituted a declaratory judgment action against the Appellant regarding the statutory and constitutional validity of Ordinance No. 75–2 on February 26, 1987. The Appellee maintained in the action that the ordinance prevented him from building garage apartments on his property. The Appellee further alleged an unconstitutional

---

1. We find the Appellant's assignments of error to be largely redundant. Essentially, the issues this Court must determine are whether the lower court committed error in allowing the jury to decide questions of law, and whether Ordinance No. 75–2 is a building regulation or a zoning ordinance. As ancillary issues, we also discuss whether Ordinance No 75–2 was properly enacted both constitutionally and statutorily, and whether the lower court properly permitted the Appellee to amend his complaint to allege a contract theory of liability against the Appellant. The resolution of these issues necessarily resolve the assignments of error raised by the Appellant.

taking of his property and that the subject ordinance constituted a zoning ordinance which the Appellant had failed to publish notice of in violation of West Virginia Code § 8–24–18 (1990).

The Appellee's case remained in the circuit court for over four years until September 5, 1991, when the court granted the Appellee leave to amend his original complaint. Up until that time, the circuit court had not entered a ruling on the declaratory judgment action. On September 10, 1991, the Appellee amended the original complaint to include a claim for money damages for lost rents which he would have allegedly realized had he been permitted to build the garage apartments. The Appellee also alleged that the Appellant had entered into a contract with him when the Appellant mistakenly issued the building permits on January 29, 1986, only to revoke the permits a few days later on February 4, 1986. ·

The case proceeded to trial with the lower court never entering an order resolving the declaratory judgment action. Consequently, the legal issues were presented to the jury for resolution as indicated by the jury instructions given at trial.[2] On May 20, 1992, a jury returned a verdict in favor of the Appellee, awarding damages in the amount of $10,000.

## II.

The first issue before the Court is whether the circuit court erred in allowing legal issues to be decided by the jury. The Appellant argues that the lower court was legally required to make rulings on questions of law and committed plain error in allowing this civil action to be tried by a jury since all of the questions presented were questions of law. The Appellee concedes in his brief that "the status of 'Amendment to Ordinance 75–2' as a 'zoning ordinance' or a 'building ordi-

nance' should have been determined by the trial court as a matter of law."

It is well-settled that questions of law should be determined by the court and not the jury. For instance, the whole purpose of the Uniform Declaratory Judgments Act, West Virginia Code §§ 55–13–1 to –16 (1981), is to enable courts to dispense quickly with legal questions which arise in litigation. West Virginia Code § 55–13–1 provides that "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed." Further, "[a]ny person ... whose rights, status or other legal relations are affected by a ... municipal ordinance ... may have determined any question of construction or validity arising under the ... ordinance ... and obtain a declaration of rights, status or other legal relations thereunder." W.Va.Code § 55–13–2.

■ In interpreting the Declaratory Judgment Act, this Court stated that

[t]he purpose and advantage of securing a declaratory judgment is to avoid the expense and delay which might otherwise result, and in securing in advance *a determination of legal questions* which, if pursued, can be given the force and effect of a judgment or decree without the long and tedious delay which might accompany other types of litigation.

*Crank v. McLaughlin*, 125 W.Va. 126, 133, 23 S.E.2d 56, 60 (1942) (emphasis added). This Court has also upheld the use of a declaratory judgment action where the "existing controversy ... involves the construction or application of a statute...." Syl. Pt. 1, in part, *Arthur v. County Court of Cabell County*, 153 W.Va. 60, 167 S.E.2d 558 (1969).

■ Further, another method enabling courts to make legal determinations is the

---

**2.** For instance, plaintiff's instruction No. 2, provided, in pertinent part, that:

the Court further instructs the jury that if you find by a preponderance of all the evidence in this case that the Town of Eleanor, a municipal corporation, limited Ray Harrison's use of his real estate to the full limits of the boundaries thereof by revoking building permits issued to him, *and if you further find that the city ordi-*

*nance relied on by the Town of Eleanor to revoke the building permits issued to Ray Harrison did not comply with Constitutional requirements of due process of law in that the ordinance relied on was not advertised in a newspaper or discussed at a public hearing, then you may find that the limits the Town of Eleanor placed on Ray Harrison' use of his property were unlawful....* (Emphasis added).

summary judgment proceeding. "A motion for summary judgment should be granted if the pleadings, affidavits or other evidence show that there is no genuine issue as to any material fact and that *the moving party is entitled to judgment as a matter of law.*" Syllabus, *Hanks v. Beckley Newspapers Corp.,* 153 W.Va. 834, 172 S.E.2d 816 (1970) (emphasis added); *see* W.Va.R.Civ.P. 56. It has also been recognized that:

> The summary judgment procedure provided by Rule 56 of the West Virginia Rules of Civil Procedure does not infringe the constitutional right of a party to a trial by jury; it is not a substitute for a trial or a trial either by a jury·or by the court of an issue of fact, *but is a determination that, as a matter of law, there is no issue of fact to be tried.*

Syl. Pt. 7, *Petros v. Kellas,* 146 W.Va. 619, 122 S.E.2d 177 (1961) (emphasis added).

Finally, in determining whether the judge or the jury should decide legal questions, Judge Brannon, writing in the context of a criminal case, said:

> 'It is the duty of the court to instruct the jury as to the law, and it is the duty of the jury to follow the law as laid down by the court.... If the jury were at liberty to settle the law for themselves, the effect would be, not only that the law itself would be most uncertain, from the different views which different juries might take of it; but in the case of error there would be no remedy or redress by the injured party; for the court would not have any right to review the law as it had been settled by the jury. Indeed, it would be almost impracticable to ascertain what the law, as settled by the jury, actually was....' 'It is the province of the court, and of the court alone, to determine all questions of law arising in the progress of the trial; and it is the province of the jury to pass upon the evidence and determine all contested questions of fact.'

*State v. Dickey,* 48 W.Va. 325, 330–31, 37 S.E. 695, 698 (1900) (quoting, in part, *United States v. Battiste,* 2 Sumn. 243, Fed.Cas. No.

14,545 and *United States v. Greathouse,* 4 Sawy. 464, Fed.Cas. No. 15,254).

■ Consequently, it is well-established that determinations involving questions of law are within the sole province of the court, while determinations of fact are within the province of the jury. Thus, the court must resolve questions of law and cannot delegate that responsibility to the jury. When a court permits a jury to make legal determinations, reversible error occurs.

■ In the present case, the lower court was presented with numerous opportunities to resolve the legal questions surrounding Ordinance No. 75–2, including the declaratory judgment action initially brought by the Appellee and the motions for summary judgment and directed verdict which were filed by the Appellant,[3] but did not do so. Accordingly, the circuit court committed reversible error by sending unresolved legal issues to the jury for resolution.

### III.

■ The underlying issue is whether Ordinance No. 75–2 is a zoning ordinance or a building regulation. The Appellant argues that the subject ordinance is not a zoning ordinance because the Appellant is not attempting to limit particular areas of Eleanor to specific uses or uses for only particular purposes, such as commercial or residential. Moreover, the Appellant argues that the building of apartments is not being restricted to certain areas within Eleanor, but rather the concern is for how far back from the street and abutting properties the apartments are built. Thus, the Appellant maintains that Ordinance 75–2 was merely intended to regulate the erection, construction, repair or alteration of apartment structures within Eleanor. Conversely, the Appellee contends that Ordinance 75–2 was clearly an attempt to 1) classify the use of buildings; 2) regulate the height of buildings; 3) regulate and determine the area of front, rear and side yards, courts and other open spaces about such buildings; and 4) classify, regu-

---

**3.** The Appellant should have brought the matter to this Court's attention via a writ of mandamus.

*See* W.Va.Code § 51–1–3 (1981).

late and restrict the location of buildings designed for a specified use, such as apartments. The Appellee also argues that the amendment to Ordinance No. 75–2 prevented him from building a proposed garage apartment on his property and therefore resulted in an unconstitutional taking of his property.[4] Further, the Appellee contends that the only authority which gives the Appellant the right to enact such an ordinance is found in West Virginia Code § 8–24–39(a), (d) & (f) (1990) and that all of these statutory provisions pertain to general zoning authority.

■ It is clear that the Appellant had the power to enact building ordinances pursuant to West Virginia Code § 8–12–13(a)(1) (1990) which provides:

(a) The governing body of every municipality shall have plenary power and authority by ordinance or a code of ordinances to:

(1) Regulate the erection, construction, repair or alteration of structures of every kind within the corporate limits of the municipality, prohibit, within specified territorial limits, the erection, construction, repair or alteration of structures of wood or other combustible material, and regulate excavations upon private property[.]

Similarly, the Appellant could have also enacted a zoning ordinance under West Virginia Code § 8–24–39 which provides, in pertinent part, that:

As an integral part of the planning of areas so that adequate light, air, convenience of access, and safety from fire, flood and other danger may be secured; that congestion in the public streets may be lessened or avoided; that the public health,

safety, comfort, morals, convenience and general public welfare may be promoted; that the preservation of historic landmarks, sites, districts and buildings be promoted; and that the objective set forth in section one [§ 8–24–1][5] of this article may be further accomplished, the governing body of a municipality or a county commission shall have the following powers:

(a) To classify, regulate and limit the height, area, bulk and use of buildings hereafter to be erected;

. . . .

(d) To regulate and determine the area of front, rear and side yards, courts and other open spaces about such buildings[.]

■ This Court in *Bittinger v. Corporation of Bolivar,* 183 W.Va. 310, 395 S.E.2d 554 (1990), addressed the differences between statutory provisions concerning building ordinances and zoning ordinances:

While perhaps confusing, both zoning regulations and planning or building regulations involve the use of a certain area of the community. The distinguishing factor between the two types of permits is that a building permit involves how that use is undertaken, while a zoning permit concerns whether a certain area may be used for a particular purpose.

183 W.Va. at 314, 395 S.E.2d at 558; *see* Syl. Pt. 1, in part, *Kaufman v. Planning & Zoning Comm'n,* 171 W.Va. 174, 298 S.E.2d 148 (1982) ("Zoning is concerned with whether a certain area of a community may be used for a particular purpose. . . .") Thus, in *Bittinger,* this Court upheld the lower court's finding that an ordinance which limited lot re-

---

4. While the Appellee states this argument, the argument was not actually briefed before this Court. Furthermore, by way of analogy, this Court has recently held in syllabus point 6 of *McFillan v. Berkeley County Planning Commission,* 190 W.Va. 458, 438 S.E.2d 801 (1993) that

Land-use regulations will not constitute an impermissible taking of property under the Fifth Amendment to the United States Constitution and Section 9 of Article III of the West Virginia Constitution if such regulations can be reasonably found to promote the health, safety, morals, or general welfare of the public and the regulations do not destroy all economic uses of the property.

We summarily conclude that the amendment to Ordinance No. 75–2 did not constitute an impermissible taking of the Appellee's property. Further, the Appellee did build an apartment complex on his property; thus, the subject ordinance did not destroy all the economic uses for the Appellee's property.

5. West Virginia Code § 8–24–1 (1990) provides, in part, that "[t]he governing body of every municipality and the county court [county commission] of every county may by ordinance create a planning commission in order to promote the orderly development of its governmental units and its environs."

quirements and provided for space restrictions, as well as required documentation of road access, traffic generation, traffic flow, and public services, was a building ordinance. 183 W.Va. at 314, 395 S.E.2d at 558. Consequently, a building ordinance enacted pursuant to West Virginia Code § 8–12–13 involves how the use of any given piece of property is undertaken, while a zoning ordinance enacted pursuant to West Virginia Code § 8–24–39 concerns whether a certain piece of property may be used for a particular purpose.

■ In the present case, the amendment to Ordinance No. 75–2, enacted by the Eleanor City Council, involving the setback requirement of at least twenty feet is clearly nothing more than a building ordinance since it only involves how the apartment complex that the Appellee sought to build was undertaken. The ordinance in no way addressed whether the Appellee's property could be used for a particular purpose, such as an apartment complex; therefore, it was not a zoning ordinance. Additionally, according to the representations made by the Appellee in oral argument, the Appellee did in fact build some apartments on the property. Finally, while West Virginia Code § 8–24–1 grants municipalities the authority to create planning or zoning commissions and to enact comprehensive zoning plans, the Appellant has never undertaken to establish either a planning or zoning commission or to enact a comprehensive plan. This fact establishes additional support for Ordinance 75–2 being a building rather than a zoning ordinance, given that the implementation of these statutory mechanisms necessarily relate to and are an integral part of the enactment of zoning.

■ There are a couple of ancillary matters which require discussion by the Court. First, the Appellee contends that even if the amendment to Ordinance 75–2 is determined to be a building ordinance, it was not validly enacted by the Appellant because not only did the Appellant fail to give notice and to provide a hearing, but the Appellant also failed to read the proposed ordinance at two council meetings without making any material amendment to the ordinance at the same meeting in which said ordinance was adopted. It is undisputed that had the Appellant enacted a zoning ordinance in connection with a comprehensive plan, West Virginia Code § 8–24–18 requires that a hearing be conducted and that notice of that hearing be given at least thirty days prior to the date of hearing. However, given that the amendment to Ordinance No. 75–2 was a building ordinance, West Virginia Code § 8–11–4 which sets forth the procedures for enacting an ordinance provides, in pertinent part, that:

> it shall not be necessary ... for the governing body of any municipality to publish in a newspaper any proposed ordinance prior to the adoption thereof or any enacted ordinance subsequent to the adoption thereof or any enacted ordinance subsequent to the adoption thereof, and any and all ordinances of every municipality shall be adopted in accordance with the following requirements ...
>
> (1) A proposed ordinance shall be read by title at not less than two meetings of the governing body with at least one week intervening between each meeting, unless a member of the governing body demands that the ordinance be read in full at one or both meetings. If such demand is made, the ordinance shall be read in full as demanded.
>
> ....
>
> (3) A proposed ordinance shall not be materially amended at the same meeting at which finally adopted.

A review of the record indicates that the amendment to Ordinance No. 75–2 was first read at the town council meeting on July 19, 1984, and the second reading occurred at the town council meeting on August 2, 1984. Further, while there is a handwritten change in the ordinance number from what appears to be 75–1 to 75–2 in the minutes of the August 2, 1984, meeting, it is clear that there were no material alterations in the actual amendment to Ordinance No. 75–2. Thus, the amendment to Ordinance No. 75–2 was properly enacted pursuant to West Virginia Code § 8–11–4.

■ Finally, the lower court permitted the Appellee to amend his complaint to allege that the Appellant had entered into a con-

tract with him when the Appellant mistakenly issued building permits to him on January 29, 1986, and then revoked the permits by letter dated February 4, 1986. This contract theory, however, is simply unsupported by the law. In *Segaloff v. City of Newport News*, 209 Va. 259, 163 S.E.2d 135 (1968), the Appellants, Charles Segaloff and Walter Rabinowitz, sought and received building permits from the Appellee for the construction of a store and canopy. *Id.* at 260, 163 S.E.2d at 136. During construction, a building inspector observed that the canopy violated the city's thirty-foot setback requirement as specified in a city zoning ordinance. *Id.* at 260–61, 163 S.E.2d at 136. The Appellee obtained an order requiring that the portion of the canopy in violation of the setback requirement be removed. *Id.* at 261, 163 S.E.2d at 136. The Appellant claimed that the Appellee was estopped from withdrawing the building permit. The Supreme Court of Appeals of Virginia found the Appellant's claim unpersuasive:

> If a building permit is issued in violation of law, it confers no greater rights upon a permittee than an ordinance itself, for the permit cannot in effect amend or repeal an ordinance, or authorize a structure at a location prohibited by the ordinance. Its issuance by such a municipal officer is unauthorized and void.

*Id.*, 163 S.E.2d at 137; *see generally* 101 C.J.S. *Zoning* § 238, at 1001 (1958) ("Generally, a[ ] ... permit ... which violates, or does not comply with, the ... ordinances is void, or a nullity, and confers no rights on the permittee ... and does not bind the municipality in any respect, even though the permittee may have commenced building operations, or otherwise incurred expenses or obligations thereunder.") (footnotes omitted); 101A C.J.S. *Zoning & Land Planning* § 193 (1979 & Supp.1993). Consequently, in the present case, the original issuance of the building permits to the Appellee was in violation of Ordinance 75–2 and accordingly, those permits were void. Furthermore, the Appellant was not legally bound in any way as the result of the issuance and subsequent revocation of the permits since the permits were originally issued in violation of an ordinance. Accordingly, there was no legal theory on which the Appellee could allege a contract theory.

Based on the foregoing, the decision of the Circuit Court of Putnam County is hereby reversed and remanded for the entry of an order consistent with this opinion.

Reversed and remanded.