# CHARLESTON.

KANAWHA NATIONAL BANK *et al. v.* BLUE RIDGE COAL CORPORATION *et als.*

(No. 6395)

Submitted May 14, 1929.     Decided May 21, 1929.

*Lilly, Lilly & Warwick,* for appellant.

*Campbell & McClintic* and *Ernest K. James,* for appellee Coal River Mining Company.

LIVELY, JUDGE:

In this creditors' suit against the Blue Ridge Coal Corporation a receiver was appointed and the cause was referred to a master commissioner to ascertain the assets of the defendant corporation and the liens thereon in their order and priority. Morrow Manufacturing Company, appellant, appeared before the commissioner and asserted title to a unit of machinery known as Morrow Standard four-track shaker screens, complete with loading booms and cross-over dump, by virtue of a conditional sales contract with the Blue Ridge Coal Corporation duly recorded in the proper office. This claim of ownership was resisted by the receiver and by Brush Creek Coal Company which owned the seam of coal under the land on which tipple No. 3 of defendant, Blue Ridge Corporation, was erected and to which tipple the machinery in controversy was attached. The receiver and Brush Creek Coal Company contended that the machinery was a fixture to the tipple, and the reservation of title contract, recorded, by which the machinery was sold to Blue Ridge was void and of no effect as against the receiver and the owner of the coal seam, because the contract so recorded did not have a statement therein signed by the seller briefly describing the realty and stating the machinery was to be affixed thereto, as required by section 7 of chapter 99-A, Code. The parties went to proof and the commissioner reported that the failure of the conditional sales contract to have therein a statement signed by the seller briefly describing the realty and asserting that the machinery was to be affixed thereto, rendered the reservation of title null and void as against the Coal River Mining Company, which asserted claim to the machinery upon the ground that it had been affixed to its realty and become a part thereof. Appellant excepted to this report which exceptions were overruled and the decree confirming it was entered on the............day of August, 1928; from which this appeal is prosecuted.

Appellant assigns two grounds of error, namely: 1. That the court and commissioner erred in holding that the machinery or equipment was so installed in the tipple as to become a

fixture and a part of the realty; 2. that the court erred in decreeing that the machinery so attached became a part of the realty of the Brush Creek Coal Company which did not own the surface of the land on which the tipple was erected, but owned only, in fee, the underlying coal which was being mined.

To understand the second assignment of error it is necessary to detail the interest of the parties to the real estate on which the tipple was erected. In 1901 the coal under this land was owned by Samuel Stephenson, who, in that year, sold it to the Coal River Mining Company with mining rights to the surface, such as the erection of buildings, oil tanks, and the like, thereon. At that time a Mr. Turley owned the surface. In 1917 the Coal River Mining Company leased this coal to the predecessors of defendant, Blue Ridge Coal Corporation, in which the usual mining rights were contained, and in which it was provided that at the termination of the lease or in event of a forfeiture thereof, the lessee could remove from the premises machinery, tools, mine cars, steel rails, stock of merchandise and the like; that any and all structures, buildings and improvements on the leased premises should revert to the lessor, the Coal River Mining Company. This lease of 1917 was assigned to the Brush Creek Coal Company by the lessees therein named, and the Brush Creek Coal Company erected the tipple and began mining operation, and becoming financially involved, in 1924 assigned its lease to Ramsey, Trustee, who, later, in 1925, assigned it to the Blue Ridge Coal Corporation which proceeded to further mine the coal. In the meantime the Brush Creek Coal Company, which began the operation, purchased the surface of the land from Turley and now owns the surface in fee. It is contended by appellant that the court erred in decreeing that the tipple was a part of the real estate of the Coal River Mining Company, the owner of the coal, instead of decreeing that it belonged to the Brush Creek Coal Company, the owner of the surface on which the tipple was erected. We cannot perceive wherein appellant would be benefited by the reversal of the decree on this second alleged error therein. If it cannot recover the property under its conditional sales contract, it

is rather unimportant to it as to whether the machinery or equipment has become a part of the property of the owner of the coal, or the owner of the surface, the Brush Creek Coal Company. It appears from the record that the creditors of the Brush Creek Coal Company contended that the equipment, the subject of litigation, had become a part of the property of the Brush Creek Coal Company, which contention was decided against them by the chancellor. What benefit would appellant receive by a reversal of the decree on that ground. Therefore, we do not consider it important to decide whether the equipment, if it has become a fixture at all, is a part of the realty of the Brush Creek Coal Company, or the Coal River Mining Company. That question as between them is not before this Court on this appeal.

We now come to the first assignment of error, namely, did the equipment or machinery become a fixture on the real estate? It will be noted that the Blue Ridge Coal Corporation took charge of the lease in the year 1925. In December of that year, appellant made its contract with the Blue Ridge Coal Corporation for the purchase of this equipment in which there is retention of the title until the purchase price of $18,000 had been paid, and this contract with this reservation of title was promptly recorded in the office of the clerk of the county court of Boone county. The equipment displaced some old screens then used at the tipple, and was installed by the president and general manager of the Blue Ridge Coal Corporation, together with an engineer representing the appellant. Very little change was made in the tipple for the installation for the new equipment. It was necessary to fasten it to the tipple so as to make it stationary, and it was fastened to bents by removable bolts on which nuts were screwed to hold the same. Probably there were four or more bolts to hold the equipment in place. It appears that by unscrewing the nuts, and removing the bolts, the equipment could be easily removed without any detriment to the tipple or equipment. In about eight or nine months after this equipment was installed, the Blue Ridge Company went into the hands of a receiver in this creditors' suit. No payment had been made by the Blue Ridge Company on the purchase

price, and if appellant cannot recover the property, its debt will be entirely lost to it, except as it may receive something as a general creditor in the windup of the affairs of the Blue Ridge Company; a rather remote contingency. The trend of modern decisions in determining whether an article is a fixture or chattel is against the doctrine prevailing at common law that the mode of annexation is the test, whether slight and temporary, or immovable and permanent. It seems that at common law all articles which were attached to the realty, with a view to the purposes for which they were employed, were held to be fixtures. The mode of annexation was the criterion. 20 Ann. Cas. 603, 30 L. R. A. (N. S.) 576. But our modern decisions do not make the mode of annexation the test. The article must be in some way attached to the realty; it must be adapted to the use to which the real estate is being put at the time of the attachment of the article thereto; and it must be the intention of the party placing it there to make it a permanent part of the realty. JUDGE RITZ in *Snuffer* v. *Spangler,* 79 W. Va. 628, clearly states the modern tests for determining whether an article has become a fixture. It has been said that of the three tests, all to be considered, the intention of the party in attaching the article to the freehold is the controlling one, and it is generally held to be the most important test. 17 Am. Dec. 694; 83 Am. St. Repts. 836. These three tests control, but like faith, hope and charity, the greatest is the last named. In *Teaff* v. *Hewitt,* 1 Ohio St. 511, (59 Am. Dec. 634, note), it was held that the intention to make the chattel a permanent accession to the freehold must affirmatively and plainly appear, and if there was doubt of that intention, the article did not change its status from that of a chattel. It is quite clear that the intention of the Blue Ridge, as shown by the evidence of Ross, its president and manager, who installed the equipment, was not to make it a permanent part of the freehold. Moreover, the contract under which he purchased expressly provided that the equipment should remain the property of the seller until paid for, and might be repossessed by the latter upon failure of payment, and that the property furnished under that contract should not *"become a fixture or part of the real estate*

on which the same may be located or installed, but all or any part thereof may be separated and removed from said real estate, and may be repossessed by the Morrow Manufacturing Company or its agent upon default in payment of the purchase money therefor.'' This agreement was binding upon the parties thereto, but of course would not be binding on third parties without notice. But it strongly indicates the *intention* of the party who placed the equipment in the tipple that it should not become a fixture. Moreover, this contract was not a secret one, but was duly recorded where all persons interested might inspect it and be informed; and Mr. Ross says that the directors of his company met with Cassingham, President of the Coal River Mining Company, at the Holley Hotel when the plans and intentions in purchasing the equipment were very fully discussed with him, and that the latter company knew of the purchase and installation of the equipment at tipple No. 3. That evidence is not controverted.

We hold that the evidence and circumstances impel the conclusion that it was not the intention of the purchaser to make the equipment a fixture on the real estate, and that the commissioner and chancellor of the Court of Common Pleas erred in so holding and decreeing; and that the circuit court erred in refusing the appeal and deeming the decree of the Common Pleas court as plainly right.

The decree, in so far only as it refuses the relief sought by appellant, will be reversed.

*Reversed.*