MR. KLEAN CAR WASH, INC.

*v.*

WILLIAM S. RITCHIE, JR.,

*Commissioner, etc.*

(No. 13778)

Decided June 6, 1978.

*W. Robert Carr, John R. Frazier* for plaintiff in error.

*John H. Gorman, John F. Rist, III,* for defendant in error.

MILLER, JUSTICE:

Appellant, the Commissioner of the West Virginia Department of Highways (herein termed State), complains of an order entered by the Circuit Court of Raleigh

County granting a writ of mandamus in favor of Mr. Klean Car Wash, Inc. (herein called Mr. Klean). The order, dated November 2, 1975, requires the appellant to institute condemnation proceedings against appellee to determine the damages the corporation allegedly sustained when the State enlarged a highway onto property it leased.

The State contends the trial court erred in granting the writ since the question of damage to Mr. Klean's leasehold interest had been determined in a previous condemnation proceeding in the Circuit Court of Raleigh County. We disagree and affirm the Circuit Court's order.

In March of 1973 the State filed an application for condemnation in connection with certain improvements it planned to make on Route 21 in Raleigh County. The application named the following defendants: Zetta L. McDaniel; Mr. Klean Car Wash, Inc. (formerly BMB, Inc., a Corporation); Donald D. Hodson; George D. Zamias; Appalachian Power Company, a Corporation; Columbia Gas of West Virginia, Inc., a Corporation; Beckley Water Company, a Corporation; Peake Petroleum Company, a Corporation; Chesapeake & Potomac Telephone Company, a Corporation; and North Beckley Public Service District.

In the application, the State alleged that the title to the property was in the name of Zetta L. McDaniel. The particular area to be taken was described by metes and bounds description and a reference to the appropriate deed books where Zetta L. McDaniel had acquired the title.

After the filing of the application, the State, pursuant to W.Va. Code, 54-2-14a, tendered to the court the sum of $61,400, which it claimed was the fair market value of the property sought to be condemned. Subsequently, the landowner, Zetta L. McDaniel, by a written motion to all parties, requested the court to permit her to receive the entire sum of $61,400 on the basis that none of the other defendants had any legal right or claim to such sum.

The matter came on for hearing on June 18, 1973, before the Circuit Court of Raleigh County. The landowner and Mr. Klean were represented by counsel. The State, as the record indicates, had through counsel earlier advised the court that it was not interested in the particular motion and would not appear.

At that hearing, a lease between Zetta L. McDaniel and Mr. Klean was introduced which contained two pertinent provisions. The first was a provision that permitted the lessee to install improvements upon the property, such as buildings, gasoline pumps, tanks, lights, and vacuum cleaners, and further provided that such installations remained the personal property of the lessee with the right to remove them within thirty days after termination of the lease.

The second provision related to condemnation and provided that in such event, if condemnation rendered the property not reasonably suitable for its busines purposes, the lessee could terminate the lease. However, the lessee retained a right of action for all damages which accrued to it by reason of any condemnation of the demised premises.

The condemnation paragraph concluded with the following provisions as to the lessor's rights: "It being expressly understood, however, that condemnation proceeds for the value of the land of the Lessor taken by the condemnation or damages to such land of Lessor not taken shall belong to the Lessor."

Only two witnesses testified at the hearing. Testimony on behalf of the landowner was essentially proof of the lease and the fact that the highway project would take appoximately 23 percent of the leasehold interest. It is not disputed from the record that the landowner owned 22 acres abutting Route 21, that the highway project was taking a 75-foot strip along the entire frontage of the property, and the leasehold interest consisted of approximately two acres.

Appellee's witness, the President of Mr. Klean, testified that the 75-foot strip being taken from the leasehold

property would encompass certain signs, fixtures, vacuum cleaners affixed to the property, and would probably necessitate the relocation of the building on the leased property because of its close proximity to the property acquired by the State.

The trial court, after taking the matter under advisement, issued a written opinion in which it concluded that the State's application for condemnation was against only the interest of the landowner, Zetta L. McDaniel, and that consequently, she was entitled to the entire sum of $61,400. Trial court, in its memorandum, expressly stated as to the appellee:

> "This is not to say that Mr. Klean Car Wash does or does not have an interest in the real estate leased from Zetta L. McDaniel. I do not decide that point. All I am holding is that such interest, if any, is not being condemned in this proceeding under the existing pleadings."

Pursuant to the court's written opinion, an order was entered on June 22, 1973, dismissing all of the other defendants except the landowner from the condemnation action. The action then proceeded to a Commissioner's hearing on April 30, 1974, where the Commissioners awarded $61,400 to the landowner, plus interest, and by an order entered on June 17, 1974, this amount was paid and the condemnation action was dismissed.

Thereafter, on April 22, 1975, Mr. Klean instituted its petition for a writ of mandamus seeking to compel the Commissioner to commence a condemnation proceeding to reimburse it for damages done to its leasehold, fixtures and building by virtue of the highway improvements.

Initially, it should be made clear that the State does not contend that it was unaware of the basis of the trial court's action in dismissing the appellee from the eminent domain proceeding.[1] Rather, the State's position is

---

[1] The State received a copy of the June 13, 1973, memorandum from the Judge which ruled on the dismissal of Mr. Klean and the

that the value of the leasehold interest was paid for in the condemnation suit when it acquired the landowner's interest. Alternatively, it argues that Mr. Klean's interest is in the nature of personal property and not subject to condemnation.

This Court, in *State v. Bouchelle,* 137 W. Va. 572, 73 S.E.2d 432 (1952), held that a proceeding in eminent domain is statutory and that our statutes must be strictly construed. There, the Court issued a prohibition against a circuit court which had attempted to require the State Road Commission to amend its pleading to include property that was not within its original condemnation application, stating:

> "Though it is true the questions whether the proposed use of property is public or private and the ascertainment of just compensation to be paid to the owner are judicial in their nature, *State ex rel. United Fuel Gas Co. v. Max De-Berry, Judge, etc, et al.,* 130 W.Va. 481, pt. 1 Syl., 43 S.E.2d 415, the sole discretion to determine what quantity of land is necessary for a public use is vested in the agency resorting to eminent domain; and such discretion will not be interfered with by the courts unless it has been abused. *State v. Horner,* 121 W.Va. 75, pt. 3 syl., op. page 80, 1 S.E.2d 486; *Shelton v. State Road Commission,* 113 W.Va. 191, syl., 167 S.E. 444; *The City of Huntington v. Frederick Holding Co.,* 85 W.Va. 241, pt. 3, syl., 101 S.E. 461." [137 W.Va. at 577-78]

In *Board of Education v. Shafer,* 147 W. Va. 15, 124 S.E.2d 334 (1962), this Court had before it the question of whether the State could condemn, under our eminent domain statutes, less than the entire fee interest, and in particular whether the failure to condemn certain easements would result in the landowners being compensated in something other than money. Again, the Court

---

other defendants. The State endorsed the dismissal order entered on June 22, 1973, which made the court's memorandum opinion a part of the record.

recognized the authority vested in the agency resorting to eminent domain to determine the extent of the property to be taken. Moreover, it noted that authorization for the acquisition of an estate less than a fee simple was specifically recognized by the language of W.Va. Code, 54-1-8, 54-2-2, 54-2-9, 54-2-12, and 54-2-20.

Both *Bouchelle* and *Shafer, supra,* speak to the right of the condemnor to select the particular area and interest in property that it desires to take by way of condemnation. In *Department of Natural Resources v. Cooper,* 152 W. Va. 309, 162 S.E.2d 281 (1968), the Court recognized that W.Va. Code, 54-2-2, permitted the State to ascertain in a single proceeding all damages arising to all persons who own interest in the land to be taken. The efficacy of such a rule on reducing multiplicity of suits is obvious.

In *State ex rel. Firestone Tire & Rubber Co. v. Ritchie,* 153 W. Va. 132, 168 S.E.2d 287 (1969), it was pointed out that our eminent domain statutes relate only to interests in real property, and therefore where a State agency is involved which enjoys governmental immunity under Article VI, Section 35 of the Constitution of West Virginia, it can only be required to pay damages to real property.

This Court, in the case of *Appalachian Electric Power Company v. Sawyers,* 141 W. Va. 769, 93 S.E.2d 25 (1956), recognized that a lessee owning fixtures attached to the realty which are damaged by the State in the course of constructing a highway may compel the State through mandamus to institute an eminent domain proceeding to determine its damage. In the *Appalachian* case, the State had previously, through a voluntary conveyance, acquired the underlying fee or easements over the same from the landowner.

The difficulty in the present case lies in the fact that the State, without objection, permitted the trial court to find that the $61,400 represented only the value of the land and did not include the value of the fixtures or building placed on the land by the lessee, Mr. Klean. It

was based on this finding that the court dismissed Mr. Klean from the eminent domain proceeding.

Thereafter, the eminent domain case proceeded to a hearing before the Commissioners, who awarded the sum of $61,400 for the landowner's interest.

Obviously, the State gained a substantial benefit from the court's earlier ruling that the fixtures and building attached to the leasehold interest were not a part of the value of the land. We have no doubt that if the State had objected to the June 22, 1973, order awarding the entire $61,400 deposit to the landowner, and had the State demonstrated that by its condemnation application and deposit it intended for all interests in the property to be condemned, the court would then have proceeded to properly have ascertained the total fair market value of the real estate being condemned, and apportion the award between the landowner and the lessee. This is the general rule, as stated in 2 Nichols, *Eminent Domain* § 5.81(2) (3d ed. 1976):

> "It frequently happens that, in the case of a lease for a long term of years, the tenant erects buildings upon the leased land or puts fixtures into the building for his own use. It is well settled that, even if the buildings or fixtures are attached to the real estate and would pass with a conveyance of the land, as between landlord and tenant they remain personal property, and, in the absence of a special agreement to the contrary, may be removed by the tenant at any time during the continuation of the lease provided such removal may be made without injury to the freehold. This rule is, however, entirely for the protection of the tenant and cannot be invoked by the condemning party. If the buildings or fixtures are attached to the real estate, they must be treated as real estate in determining the total award, but in apportioning the award they are treated as personal property and credited to the tenant. . . ."

*See* 18 Am. Jur. 2d *Eminent Domain* § 292; Annot., 3 A.L.R.2d 286 (1949).

The State, having obtained the benefit of the trial court's order dismissing the lessee, thereby removing its fixtures from being considered as a part of the total fair market value, cannot now urge this as error. We have consistently held as a general rule that a litigant who enforces or otherwise accepts the benefit of a judgment, order or decree, cannot afterward have it reviewed for error or deny the authority which granted it. *Chesapeake & Ohio Ry. v. Lane,* 113 W. Va. 51, 166 S.E. 698 (1932); *Eakin v. Eakin,* 83 W. Va. 512, 98 S.E. 608 (1919). We, therefore, affirm the order of the lower court.

In affirming the order of the Circuit Court of Raleigh County granting the rule in mandamus, we express no opinion as to the extent of the alleged damages claimed by the appellee, Mr. Klean. This will have to be determined in the eminent domain proceeding.

*Affirmed.*