364 S.E.2d 39

**WEST VIRGINIA DEPARTMENT OF HIGHWAYS and Charles L. Miller, Commissioner,**

v.

**WHEELING ANTENNA COMPANY, INC., etc.**

**No. 17522.**

Supreme Court of Appeals of West Virginia.

Dec. 17, 1987.

Jeremy C. McCamic, Wheeling, James B. Lees, Jr., Charleston, for appellant.

William G. Petroplus, Wheeling, Joseph M. Brown, Parkersburg, for appellee.

PER CURIAM:

This is an appeal by Wheeling Antenna Company from an order of the Circuit Court of Ohio County in an eminent domain proceeding. In that order the court directed a verdict against the appellant on all issues in the case. On appeal the appellant claims that the court's action was erroneous. After reviewing the law and the record relating to the points which the appellant assigns, this Court believes that the trial court erred in entering the directed verdict of which the appellant complains. Accordingly, the judgment of the Circuit Court of Ohio County is reversed, and this case is remanded for further development.

The appellant, Wheeling Antenna Company, is a private company which operates a TV cable system in Ohio County, West Virginia. It is not a public utility. To

acquire the right to locate its cable TV wires in certain areas, Wheeling Antenna entered into revocable licensing agreements with Wheeling Electric Company and Chesapeake & Potomac Telephone Company, two public utilities. The licensing agreements permitted Wheeling Antenna to string cables and place equipment on poles owned by the utilities. The agreements contained no provision for payment of compensation to Wheeling Antenna if the company was required to remove lines installed under the agreements.

The appellee, West Virginia Department of Highways, in order to construct Interstate 70, Interstate 470 and improvements to W.Va. State Route 2 in and around Wheeling, West Virginia, required Wheeling Electric Company and Chesapeake & Potomac Telephone Company to move certain of its utility poles. When the relocation was commenced, the utilities notified Wheeling Antenna to remove its cables from their poles in accordance with the provisions of the revocable licensing agreements. In compliance with the agreements, Wheeling Antenna relocated some seven and one-half miles of cable to new locations. In the relocation certain equipment was retrieved and later reused. Other equipment was destroyed.

In 1978 Wheeling Antenna demanded payment from the Department of Highways for the value of its property taken and damages to the residue of property owned by it. The Department of Highways refused to pay damages.

Subsequently, Wheeling Antenna sought a writ of mandamus in the Circuit Court of Ohio County to mandate the Department of Highways to institute an action in eminent domain to determine what damage, if any, Wheeling Antenna was entitled to. The circuit court issued the writ of mandamus, and on or about May 29, 1981, subsequent to the issuance of the writ of mandamus, the Department of Highways instituted condemnation proceedings. In the complaint instituting the proceeding the Department of Highways denied that it had damaged any real property belonging to Wheeling Antenna and further denied that it had caused damage of any nature whatsoever to Wheeling Antenna by reason of the construction and improvement of the highways which necessitated the removal of the appellant's cables.

Very extensive evidentiary hearings were conducted in the condemnation case, and at the conclusion of the evidence the court directed a verdict in favor of the Department of Highways and against Wheeling Antenna. In reaching its conclusion to direct the verdict, the court made a number of specific findings. First, the court ruled that the licensing agreements which Wheeling Antenna had with the Wheeling Electric Company and the Chesapeake & Potomac Telephone Company were not concrete in terms of years and overall were not sufficiently concrete as to support the award of damages in a condemnation proceeding. Second, the court found that the actual cables installed, as opposed to the license rights in the utility poles, were fixtures. However, the court concluded that in view of the evidence of damages introduced during trial, evidence which related to the overall value to the cable system of each customer's attachment, and which did not indicate the value of the particular fixtures, the appellant was not entitled to recover.

In the present proceeding Wheeling Antenna asserts that the trial court erred in directing a verdict against it. It initially claims that the trial court erred in holding that its rights under its licensing agreements with Wheeling Electric Company and Chesapeake & Potomac Telephone Company were insufficiently concrete to support an award of condemnation damages.

In *Mr. Klean Car Wash, Inc. v. Ritchie*, 161 W.Va. 615, 244 S.E.2d 553 (1978), this Court indicated that West Virginia's eminent domain statutes relate only to interests in real property and that, where a State agency is the condemning party, it can be required to compensate only for damages to real estate.

■ Not all interests relating to real property are treated as interests in real property subject to condemnation. While

this Court is unaware of any case in this jurisdiction addressing the question of whether a mere licensing agreement gives rise to a property interest entitling the licensee to damages for condemnation, a number of other jurisdictions have addressed the question. The consensus reached by those jurisdictions is set out in 2 Nichols, *Eminent Domain* § 5.23 (3rd ed. 1985). Nichols indicates that:

> A license is generally revocable at will, so that the owner thereof has no remedy for an invasion of his rights. Consequently, a mere license is not generally considered compensable in eminent domain. It has been rationalized that since the sale of the dominant estate destroys the license, the license is equally destroyed upon the vesting of title in the condemnor.

The problems involved in license cases have been discussed by the Supreme Court of Appeals of Virginia in *Potomac Electric Power Co. v. Fugate*, 211 Va. 745, 180 S.E.2d 657 (1971). In that case, the court, after focusing on the question of whether licenses similar to the ones involved in the present appellant's proceeding were property rights, concluded that they were not. Specifically in dispute was the question of whether a utility was entitled to compensation for utility lines which had to be removed as a result of condemnation of the real estate upon which they were located. The lines had been installed under permits which varied in their terms, but which clearly did not create easements or other interests in the land. The permits authorized the land owners to revoke the placement rights at will, and the permits contained no provision for compensation of the utility if removal of the utility's lines was required. The Virginia court concluded:

> [W]e think the trial court accurately characterized the nature of the interests involved here when it ruled that the "rights [the plaintiffs] have to place their facilities are not property rights [and they] would have to remove and relocate on request of the grantor in each case." So what we are dealing with are mere licenses, revocable at will, permitting installation of the plaintiffs' utility facilities.

211 Va. at 747, 180 S.E.2d at 658. The court held that the word "damaged", as used in the condemnation sense, had a legal meaning as well as an ordinary meaning. For there to be damage in the legal sense, there has to be damage resulting from a legal invasion as opposed to a mere physical invasion of property or property rights. The court stated:

> The constitutional requirement of compensation does not, as the plaintiffs' argument suggests, import the necessity of payment in every case where financial loss, giving the word "damage" its ordinary rather than its legal meaning, might be shown as the result of a public undertaking. Unless rights identifiable as property rights are involved, the loss may be *damnum absque injuria.*

211 Va. at 750, 180 S.E.2d at 660. The court, finding that the licensing rights involved were not property or property rights, ruled that the utility was not entitled to compensation. The court noted that the owner of the lines, in laying its lines, did so subject to the right of the land owners to oust it at will and without liability. The court reasoned that the condemning authority, having succeeded to the ownership of the rights of the land owners, likewise succeeded to the right to oust the owner of the lines. The court concluded:

> Hence, the physical invasion by the defendant, in the form of displacement of the plaintiffs' facilities, did not result in damage in the constitutional sense.

211 Va. at 750, 180 S.E.2d at 660.

In view of the findings of other jurisdictions, and in line with the thinking of the Virginia court, this Court does not believe that licensing agreements of the type involved in the present case create property interests supporting an award of damages in condemnation. As in the Virginia case, the appellant occupied the property rights owned by Wheeling Electric Company and Chesapeake & Potomac Telephone Company at the will of the two utilities. The agreements with the appellant were revocable by the utilities, and they contained no

provision for payment of damages to the appellant. The condemning authority succeeded to the rights of the utilities.

■ Wheeling Antenna next asserts that its actual cables and equipment located on the lands condemned, as opposed to its right to locate on that land, constituted real property, the condemnation of which was compensable.

This Court agrees. In *Mr. Klean Car Wash, Inc. v. Ritchie, supra*, as well as in *Appalachian Electric Power Co. v. Sawyers*, 141 W.Va. 769, 93 S.E.2d 25 (1956), the Court recognized that the taking of fixtures attached to realty would support an award of damages in condemnation. Relating to the entitlement of compensation for fixtures located under licensing agreements, 2 Nichols, *Eminent Domain* § 5.23 (3rd 3d.1985) states:

> [E]ven though the license *per se* may not be compensable, it has been held that physical improvements made by virtue of the license are compensable.

Under this, in a legal sense, Wheeling Antenna in the present case was entitled to damages to the cables and actual equipment removed as a result of the State's action. However, it was still incumbent upon Wheeling Antenna to introduce evidence of the amount of damage to the physical improvements removed. As this Court rather clearly stated in syllabus point 4, *West Virginia Department of Highways v. Bartlett*, 156 W.Va. 431, 194 S.E.2d 383 (1973):

> There must be proof which furnishes reasonable certainty of damages in eminent domain proceedings, and damages which are remote, conjectural or speculative cannot be recovered in such proceedings.

A careful review of the record indicates that Wheeling Antenna principally attempted to show damages by presenting the value of each customer and the extent of business loss attributable to the State's action. It, however, additionally attempted to show damages by presenting evidence that approximately 7½ miles of cable and equipment were destroyed and by showing that the value of each mile of cable was between $10,000.00 and $18,000.00. It also indicated that only certain amplifiers were salvable and introduced evidence on the value of those amplifiers.

The rule relating to directed verdicts in West Virginia is rather clear. That rule indicates that:

> Upon a motion for a directed verdict, all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed.

Syllabus point 5, *Wager v. Sine*, 157 W.Va. 391, 201 S.E.2d 260 (1973); *see, Ashland Oil, Inc. v. Donahue*, 164 W.Va. 409, 264 S.E.2d 466 (1980).

In this Court's view Wheeling Antenna's evidence as to the number of customers lost and the value of each customer was clearly insufficient to establish the value and damages to individual fixtures, individual cables, and specific equipment, the items for which, under the principles discussed above, Wheeling Antenna was entitled to recover. In viewing the totality of the evidence, however, and resolving all reasonable doubts and inferences in favor of Wheeling Antenna, as must be done under syllabus point 5 of *Wager v. Sine, supra*, this Court believes that there might have been sufficient evidence for the jury, under proper instructions, to determine the damages to which Wheeling Antenna was entitled.

For the reasons stated, the judgement of the Circuit Court of Ohio County is reversed, and this case is remanded for trial on the sole issue of the damages to which Wheeling Antenna is entitled for its fixtures rendered unusable as a result of the actions of the West Virginia Department of Highways.

Reversed and remanded with instructions.