375 S.E.2d 585

**WEST VIRGINIA DEPARTMENT OF HIGHWAYS, Plaintiff Below, Appellee,**

v.

**Loren E. THOMPSON, et al., Defendant Below, Loren E. Thompson and Ruby Thompson, Appellants.**

**No. 18142.**

Supreme Court of Appeals of West Virginia.

Nov. 23, 1988.

---

William L. Jacobs, Parkersburg, for appellants.

Joseph M. Brown, Parkersburg, for appellee.

PER CURIAM:

On June 26, 1973 as part of a project to widen and improve Murdock Avenue, State Route No. 14 between Parkersburg and

Vienna, the West Virginia Department of Highways took part of the property owned by Loren E. Thompson. In the 1986 condemnation proceeding the jury awarded $30,000 as compensation. On appeal, the appellant asserts that the trial court incorrectly limited the expert testimony and erred in holding, as a matter of law, that the machinery located on the property was personal property and not part of the real property. For the following reasons, we reverse the trial court and remand the case for a new trial.

In 1973 the Thompson property was the site of an industrial plant known as Parkersburg Die and Tool Company. The plant, a machine shop, consisted of two buildings sharing a common wall: one was a converted roller rink constructed in the middle 1930's and the second was designed and constructed by Loren Thompson in 1946. The special features of the second building included reinforced floors, rail tracks, overhead crane and conduits in the floor for electric power, air, water and natural gas. The machinery was moved into the plant from its previous location and connected to the conduits. Some machines were "bolted down" and some were "grouted in concrete".

Although heavily used by Loren E. Thompson in the 1940's and 50's, by 1973 the machine shop was used in a reduced fashion.[1] Testimony and photographs of the plant taken in 1973 show that the building had cracks in the wall, broken windows, water on the floor, a car with a substantial accumulation of dust (believed to be a 1952 Buick) and various machines that appeared not to have been in operating condition for about five years. There were two tenants in the building, one who stored his carnival machinery and the other, an ironworker, who made fences and other items.

As a result of the 1973 Department of Highways take, Loren Thompson lost .072

acres permanently and two temporary easements of .03 and .366 acres. As a result of the permanent easement, the building was shortened about eight feet and the Department of Highways at the expense of the State, removed and replaced the front wall. No machinery was in the area of the building taken and the utilities were restored.

According to the appellant, as a result of the 1973 take, the building became useless as a machine shop. The record indicates that after 1973, the plant had problems with water, excessive vibrations. They also had difficulty with large trucks picking up and delivering items to the plant. Testimony was also presented that the 1973 take did not cause these problems.

On October 15, 1983 Loren E. Thompson died and the appraisal of his estate listed the machinery as personal property. In 1984 the machinery was sold at auction and removed from the plant. The ownership of Loren E. Thompson's property passed to Ruby Thompson, his wife, who died during these proceedings. The appellant is their son, James L. Thompson, executor under the Last Will and Testament of Mrs. Thompson. In 1984 the plant building was sold and demolished. Currently the land is used as a parking lot for a restaurant.

During the jury trial held August 26 through 29, 1986, the trial judge refused to let Jay Goldman, a real estate appraiser, testify because Mr. Goldman had not seen the property before the building was torn down. The trial judge also ruled, as a matter of law, that the machinery was personal property and not fixtures. Thus the court withheld from jury consideration whether the machines were fixtures, and if fixtures, their value in determining the amount of compensation. On appeal to this Court, the appellant argues that the trial court erred.

---

1. The testimony of James L. Thompson, son of Loren E. Thompson and appellant herein, about the use of the plant in 1973 was that:

A: It was capable of being used as such up until the time of such.

Q: Was it being used as such up to the time of the take?
A: In a trendy fashion; it was being used in a reduced fashion.

## I

Expert testimony that will assist the trier of fact to understand the evidence or to determine a fact in issue is permitted under the *West Virginia Rules of Evidence*. In Syllabus Point 3, *Ventura v. Winegardner*, 178 W.Va. 82, 357 S.E.2d 764 (1987), we stated:

> "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." W.Va.R.Evid. 702.

In the present case, Jay Goldman was qualified as an expert in real estate appraisal by his education including two B.S. degrees in business administration and real estate and a law degree. He has had the benefit of approximately 25 additional courses and seminars, and has experience over 20 years as an appraiser of homes and industrial facilities. Mr. Goldman testified that in order to appraise the facility he spoke with Mrs. Thompson and the appellant among others, reviewed reports and photographs and visited the site, which at the time of his visit was a parking lot. Because Mr. Goldman did not see the building, the trial court refused to permit Mr. Goldman to testify. We believe that the trial court's requirement that an appraiser see the building before forming his opinion of its value is not consistent with the *West Virginia Rules of Evidence* and our previous holdings in condemnation proceedings.[2]

## II

The appellant's second major concern is the exclusion of the value of the machines from the jury's consideration in awarding compensation. West Virginia's eminent domain statutes relate only to interests in real property and when buildings and fixtures are part of the real property taken, compensation for the take should include their value. *See State Road Commission v. Curry*, 155 W.Va, 819, 828, 187 S.E.2d 632, 639 (1972); *Mr. Klean Car Wash v. Ritchie*, 161 W.Va. 615, 244 S.E.2d 553 (1978); *Dept. of Highways v. Wheeling Antenna*, 178 W.Va. 713, 364 S.E.2d 39 (1987). In the present case the trial court ruled as a matter of law that the machines in the Parkersburg plant were not fixtures. Based on that ruling, the trial court refused to allow the jury to hear testimony about the machines, to view photographs of the machines and to consider the value of the machines in determining the condemnation award.

Before a machine can become a fixture the following must occur: attachment to the real estate; adaption to the use of real estate and intention of the party to make it permanently part of the real estate. In Syllabus Point 2, *Snuffer v. Spangler*, 79 W.Va. 628, 92 S.E. 106 (1917), we stated:

> Machinery and like appliances used in connection with real estate become unremovable "fixtures" when the following conditions occur: First, such property must in some way be attached to the real estate; second, it must be adapted to the use being made of that part of the real estate to which it is attached; and third, it must be the intention of the party placing such property upon the real estate to make it a permanent accession to the freehold.

In the Parkersburg plant, the machines were attached to the building by special conduits and were either bolted to

---

**2.** The Department of Highways' reliance of *Kay v. Glade Creek & R.R. Co.*, 47 W.Va. 467, 35 S.E. 973 (1900) is misplaced. In Syllabus Point 4, *Kay v. Glade Creek & R.R. Co.*, 47 W.Va. 467, 35 S.E. 973 (1900), we stated in pertinent part:

> Opinions of witnesses not personally acquainted with land appropriated for railroad purposes are not admissible as to the value of the land actually taken, or damages to the residue, *it not being a question of expert evidence.* (Emphasis added.)

*Kay* was concerned with a farmer, not personally familiar with property taken for railroad purposes, giving his opinion on its value. *Id.* 47 W.Va. at 479, 35 S.E. at 978. In the present case, Mr. Goldman was knowledgeable about the local market value at the time of the take

the floor or grouted in concrete.[3] The photographs of the machines and the interior of the plant do not clearly indicate the method and permanency of attachment. One photograph shows a machine which had been moved from its foundation with apparently little damage in order to service the electrical connection. The record also indicates that the machines had been moved to the plant from another plant and were removed before the destruction of the building in 1984. In Syllabus Point 1, *Industrial Bank of Richmond v. Holland Furnace Co.*, 109 W.Va. 176, 153 S.E. 309 (1930) we stated:

> When an article is so annexed to a building that it can be detached without material damage to the building, the intention of the annexor ordinarily determines whether the article becomes a fixture.

*See Pocahontas Coal & Coke Co. v. By-Products Pocahontas Co.*, 112 W.Va. 390, 164 S.E. 504 (1932); *Kanawha Nat. Bank v. Blue Ridge Coal Corp.*, 107 W.Va. 397, 148 S.E. 383 (1929). The record does not show what, if any, damage occurred to the plant when the machines were removed. Although there was some attachment, the record is not clear if the attachment was of the type and degree necessary to make the machinery fixtures.

The second factor, adaption to the use of the real estate, indicates that the machines were fixtures. The plant was a tool and die shop that produced propellers, gun barrels, shafts and other large military and industrial items. The machines were massive, one weighed about 43 tons, and were essential to the operation of a tool and die shop.

The third and controlling factor, intention of the owner, is not clear. The intention of Loren Thompson is not clearly shown by the attachment of the machines. The trial court's decision that the machines were personal property, as a matter of law, seems to be based on the following: (1) the appraisement of the estate of Loren E. Thompson which listed the machine shop equipment and materials as personal property; and (2) security documents for $30,-000 loans in 1965 which included a deed of trust dated November 23, 1965 for two tracts of land and a financing statement dated November 23, 1965 for all machinery, equipment, furniture and fixtures. The appellant argues that these documents, one completed by someone other than Loren Thompson some ten years after the take and the others drafted to secure of loan, do not show a clear and unequivocable intention of Loren E. Thompson to treat the machinery as personal property. The record does not indicate how the machines were taxed.

The question of whether the machines were part of the real estate is a question of fact. Because the facts concerning the machines are disputed or susceptible to more than one inference, the question cannot be ruled on as a matter of law. 36A C.J.S. *Fixtures* § 64 (1961). West Virginia law is well settled concerning the jury's province to resolve conflicts of facts. In Syllabus Point 4, *Young v. Ross*, 157 W.Va. 548, 202 S.E.2d 622 (1974), we stated:

> It is the peculiar and exclusive province of a jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed. Point 2, syllabus, *Skeen v. C and G Corporation*, W.Va. [155 W.Va. 547, 185 S.E.2d 493] (Decided by this Court December 14, 1971).

*See Rhodes v. National Homes Corp*, 163 W.Va. 669, 263 S.E.2d 84 (1979); *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), cert. denied, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984); *Prager v. Meckling*, 172 W.Va. 785, 310 S.E.2d 852 (1983).

In the present case, we believe the question of whether the machines located in the plant on June 26, 1973, the date of the take, were fixtures and thus part of the real

and would have given expert evidence. In this case, the testimony is a question of expert evidence.

**3.** Because the trial court excluded testimony about the machines, the record is not clear about the type of bolts used and the extent of grouting in concrete.

property, is a factual question and should have been submitted to the jury.

The appellant's other assignments of error either do not constitute reversible error or are based on the trial court ruling that the machines were personal property and will be corrected on retrial.

Because the Circuit Court of Wood County erred in limiting the expert testimony and erred in not submitting the question of fixtures to the jury, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.